McINTYRE, Trustee, *vs.* THE EASTON AND AMBOY RAIL-
ROAD COMPANY.

1. A mere naked trustee of an equitable interest in lands, is not a neces-
sary party to proceedings to condemn the lands, under the charter of The
Easton and Amboy Railroad Company, requiring notice of such proceed-
ing to be given to "owners" and "persons interested."

2. That the notice to the party having such equitable interest, of the pro-
ceedings, was given to her as "occupant," and not as owner of the equita-
ble interest, does not affect the validity of the proceedings for condemna-
tion. She was apprised of the proceedings, and enabled to protect her
interest, and that interest was represented by the legal owner of the land.

3. It is no part of the duty of commissioners appointed under proceed-
ings to condemn lands by a railroad company, to assess the damages of a
party claiming an equitable interest in the lands. Their province is to
estimate the value of the land and the damages by reason of the taking of
it ; and all claims of equitable estates or liens in or on the land, are to be
left to be disposed of by agreement of the parties, or by the appropriate
tribunal.

4. When a right of appeal exists only by virtue of an act, those only
embraced within the description of those to whom the right is given, can
appeal.

5. Where a vendor is, by virtue of an agreement for the sale of lands,
in equity, trustee for the vendee, and the lands are condemned by a rail-
road company, under its charter ; if the vendee desire to appeal from the
award, he may do so in the name of the vendor, and equity will protect
his rights in the appeal as against the vendor.

6. In order to protect the rights of a *cestui que trust* in lands condemned
by a railroad company, the company was directed to pay into court the
award as to the specific portion of the lands to which the interest of the
*cestui que trust* attached, which award had been made separately as to such
land.

7. On failure to pay the award into court, an injunction to issue to
restrain the company from taking possession of the lands.

8. Bill by a mere naked trustee of an equitable interest in lands, permit-
ted to be amended, so as to make the *cestui que trust* a complainant, and
the real trustee a party defendant, so as to secure the rights of the *cestui
que trust* in an award made to the real trustee under proceedings to con-
demn the lands by a railroad company.

McIntyre *v.* Easton and Amboy R. R. Co.

On bill and affidavits, and order to show cause why injunction should not be issued.

*Mr. J. F. Dumont,* for complainant.

*Mr. A. G. Richey* and *Mr. T. N. McCarter,* for defendants.

THE CHANCELLOR.

The complainant holds an agreement made on the 29th of November, 1873, by Thomas J. Titus, with him, as trustee for Julia A. Hubbard, wife of Charles H. Hubbard, for the conveyance, by Titus, to him, as such trustee, of a lot of land in Phillipsburg, on condition that the trustee pay to Titus $1240 purchase money, in monthly payments of not less than $20 each, from the date of the agreement until the whole sum be paid, with interest at the rate of seven per cent. per annum, payable on the 1st of April, yearly, on the principal sum, or so much thereof as may remain unpaid at that time, including in the payment, which was to be made on the 1st of April, 1874, all the interest then due on a former contract of sale of the property between Titus and Charles H. Hubbard, which was, by the agreement between the complainant and Titus, declared to be forfeited for non-payment of purchase money. The trustee was to pay all taxes on the property, keep it in as good repair as it was in at the date of the agreement with him, to insure the buildings on the premises to the amount of $900, at least, in Titus' name, or to Titus' use, or assign the policy to Titus, as collateral security for the performance of the contract. The agreement further provided, that in case the complainant should not comply with the full meaning and intention of the conditions, he and his heirs and assigns should forfeit and lose all moneys paid on the contract, and also all right and claim to the premises. The trust was declared to be for Mrs. Hubbard or her heirs, upon such conditions and limitations as she or they should direct, in writing. Mrs. Hubbard, whose husband had abandoned her when the agreement was made, has

had possession of the property, under the agreement, ever since the agreement was executed. The amount due on account of the purchase money is, according to the bill, $780.

Prior to the 4th of October, 1875, the defendants caused a notice to be served on Titus, as owner, and on Mrs. Hubbard and Thomas J. Shields and Isaac Shields, as occupants, of an application to be made on that day, under the defendants' charter, to the Chief Justice, for the appointment of commissioners to examine and appraise " certain lands owned by " them, " (including the land described in the agreement) or in which " they had " an interest, and required for the use of the company in the construction of their railroad, and to assess the damages to be paid by the company for said lands and damages." No notice was given to the complainant. At the meeting before the Chief Justice, pursuant to the notice, the company were notified of the complainant's claim, under the agreement, and his counsel suggested that the proceedings be amended, so as to make the complainant party thereto. The counsel of the company, however, declined to make the amendment, and applied for the appointment of commissioners on the proceedings as they stood.

On the 5th of October, 1875, notice was given to Mrs. Hubbard of the appointment of the commissioners, and the time and place of their meeting, which was Monday the 18th of October then instant, at Phillipsburg. On Saturday evening, the 16th, the complainant first heard of the appointment of the commissioners. At the meeting of the commissioners the complainant, and Titus also, protested against including in the estimate of damages to Titus, the damages for the equitable interest of the complainant or his *cestui que trust*, under the agreement, and they protested also that that interest could not be affected unless the complainant should be made a party to the proceedings. Both Titus and the complainant offered to consent to the amendment of the proceedings, so as to make the complainant and his *cestui que trust* parties thereto, but the company's counsel refused to

make the amendment. He proposed, however, that the commissioners should value the land occupied by Mrs. Hubbard, separately. To this the complainant's counsel would not consent, but the valuation and assessment were so made. The company being about to make a tender of the amount of the valuation, and the amount assessed for damages, with a view to taking possession, the complainant filed his bill praying that they may be restrained.

The provision of the charter of the company, under which the proceedings for condemnation were taken, has received judicial construction in the case of *The National Railway Co.* v. *Easton and Amboy R. R. Co.*, 7 *Vroom* 181. It was there held, that by the term "owner" is meant the person having some legal estate which the company propose to acquire by the condemnation, and that under the more comprehensive expression, "persons interested," are included, not only the person in whom is vested the legal title which the company propose to acquire, as indicated by their application, but also other individuals, having some independent right or interest therein, not amounting to an actual legal estate; and that the object attained in making the latter class of individuals parties to the proceedings, is that their interests may be extinguished by payment out of the money awarded. In the case before me the legal title was vested in Titus. The complainant was merely a naked trustee of an equitable interest belonging to Mrs. Hubbard, the right to acquire a title to the land at a future day, on payment of the balance of the consideration money, and performing the other conditions imposed by the agreement. Of that interest Mrs. Hubbard was the real owner. She was a party to the proceedings, and was notified of them, and of their progress. For the purpose of enabling her to protect her interest in the money awarded as the value of the land, that notice was sufficient. Indeed, for that purpose, the complainant himself appears actually to have had sufficient notice, although not notified by the company.

But it is insisted that the notice to Mrs. Hubbard was not such as to authorize the condemnation of her interest in the land by virtue of the proceedings in which it was given, because if it be conceded that it was sufficient as to the person, it was not so as to the interest, for it was given to her as "occupant," and not as the owner of the equitable estate which the company knew she claimed. But she was the occupant of the premises under and by virtue of the agreement, and of its provisions, alone. For her damages in being deprived of her occupancy, an award was made to her. As to her equitable interest, it was represented by the legal owner of the land. By the notice to her she was apprised of the proceedings, and so enabled to protect her interest under the agreement. The act provides (*Pamph. L.*, 1872, *p.* 314, § 8,) that the commissioners shall " view and examine the land, and make a just and equitable estimate or appraisement of the value of the same, and assessment of damages, as shall be paid by the company for such lands and damages, the commissioners taking into consideration the benefits derived by the land owner or owners from the railroad, and assess the land and damages accordingly." It also provides that the owner or owners may recover the amount of the valuation, with interest and costs, in an action of debt. It gives an appeal to the " owner or owners of the land." It makes no provision for the assessment of the damages of persons who may have merely an equitable estate in, or lien on the premises. Indeed, a construction which would require the assessment of the damages of such persons, would necessitate the adjudication by the commissioners on the validity of the claims of persons claiming equitable interests or liens, and also as to the extent of such interests or liens; adjudications which the commissioners obviously would, oftentimes at least, not be competent to make, and which, if made by them, would be likely to embarrass the award with questions which a court of equity alone could decide. No such duty is required of them. Their province is to estimate the value of the land and the damages, by reason of the taking of it; and all claims of equitable estates

or liens in or on the land, are to be left to be disposed of by agreement of the parties, or by the appropriate tribunal.

It is urged by the complainant's counsel, that the complainant is entitled to a separate and independent assessment of the value of the interest of Mrs. Hubbard in the property. It is enough to say that the act makes no provision for such assessment. In this case, the valuation and assessment have been so made as to facilitate the adjustment of the complainant's claim, as far as it was in the power of the commissioners to do it; for they valued the portion of the land covered by the agreement separately, with a view to facilitating such adjustment. If the agreement is binding on Titus, and the amount due to him thereon is correctly stated in the bill, the complainant is entitled to all the award for that part of the premises covered by the agreement, except the amount remaining due under the agreement. It is further urged that the complainant is, by the construction now put upon the act, deprived of the right to appeal. But the act gives the right to appeal only to the owner or owners of the land; and the right of appeal exists only by virtue of the act. The vendor is, by virtue of the agreement, in equity, trustee of the land for the vendee, subject to the performance of the conditions of the agreement. Should the vendee desire to appeal from the award, she may do so in the name of the vendor, and this court will protect her rights in the appeal as against him. *Proprietors, &c.*, v. *Nashua and Lowell R. R. Co.*, 10 *Cush*. 385; *Hill on Trustees* 367; *Chambersburg Ins. Co.* v. *Smith*, 11 *Penn*. 120.

The proceedings for condemnation are, for aught that appears in the bill, regular. The act gives to the company the right to possession of the land, on payment of the value and damages; or, on refusal to receive them, on a tender; or, in case of the legal disability of the owner, payment of the money into this court. On their complying with this provision of the charter, they should not be restrained at the suit of the complainant or Mrs. Hubbard, for the cause set forth in the bill, from taking possession. In order to protect the rights of Mrs. Hubbard in the premises, they will be required to

pay into this court the award as to the land covered by her agreement, and the complainant will have leave to amend his bill by making Titus a party defendant, and Mrs. Hubbard complainant, and giving to it such form as to secure Mrs. Hubbard's rights. The company will be ordered to pay the money into court within two days from the entry of the order on this decision ; and, on failure to do so, an injunction will be ordered. On their doing so, the order to show cause and the *ad interim* stay will be discharged.