185 So.2d 734 (1966)
ARKO ENTERPRISES, INC., a Florida Corporation, Appellant,
v.
John T. WOOD et al., Appellees.
No. G-372.
District Court of Appeal of Florida. First District.
April 5, 1966.
Rehearing Denied May 19, 1966.
*735 John M. Robertson and Ernest R. Drosdick, of Anderson, Rush, Dean & Lowndes, Orlando, for appellant.
A.M. Crabtree, Jr., and Ulmer, Murchison, Kent, Ashby & Ball, Jacksonville, for appellees.
WIGGINTON, Judge.
Defendant, Arko Enterprises, Inc., has appealed a partial summary final decree rendered against it in favor of the plaintiffs, John T. Wood and E.L. Coleman, and in favor of a codefendant E.T. Jackson, in a suit for declaratory relief brought pursuant to Chapter 87, Florida Statutes, F.S.A. There is no contention that there exists any genuine issue of material facts, but only that the court erred in decreeing that plaintiffs and codefendant Jackson were entitled to judgment as a matter of law.
Stripped of the unessentials, and avoiding detailed explanations, the facts of the case appear to be as follows. Arko, the owner of a parcel of real estate in Brevard County, entered into a contract of purchase and sale with Jackson whereby it was agreed that Arko would secure approval of a subdivision plat of the property by the Federal Housing Administration, the City of Cocoa and Brevard County, and would construct and install on the land all improvements consisting of sewers, water, streets, and curbs as may be required by the Federal Housing Administration, the City of Cocoa and Brevard County for the construction of residence dwellings. A portion of the purchase price of the property was paid by Jackson to Arko upon execution of the contract, and it was agreed that the balance would be paid at the time of closing after the improvements had been installed on the property in accordance with the requirements of the contract. Jackson was acting in the transaction either as trustee for the plaintiffs, or with the plaintiffs in a joint venture. Before Arko complied with its obligations under the contract, the land in question was acquired by the housing authority of the City of Cocoa in an action of eminent domain. Jackson, who was joined as a defendant in the condemnation proceeding, failed to appear and a default judgment was entered against him. Arko, as the record owner of the land, appeared, defended the action and was paid the compensation *736 awarded by the jury and confirmed by final judgment of the court.
By this action plaintiffs pray for a judicial declaration of their rights under the contract of purchase and sale entered into between Arko and Jackson. They ask for an accounting and for a decree requiring Arko to reimburse them the amount paid upon the execution of the contract, together with interest. Arko filed a counterclaim against plaintiffs and a cross-claim against Jackson praying for a decree in its favor for the full purchase price of the property as stipulated in the contract of purchase and sale, less the amount paid by plaintiffs as a down payment upon the execution of the contract, and less the amount of the condemnation award received by it. The chancellor rendered summary final decree in favor of plaintiffs on Arko's counterclaim against them, and in favor of Jackson on Arko's cross-claim against him. The chancellor further rendered summary final decree in favor of plaintiffs against Arko for the full amount paid by them on the purchase price of the property at the time the contract was executed, together with interest and costs of the proceeding.
Arko contends on this appeal, and we agree, that the crucial issue involved in this case must be decided upon the doctrine of equitable conversion, which principle of law has long been established as a part of the jurisprudence of this state. The legal relationship of a vendor and vendee in a contract of purchase and sale is stated by the Supreme Court of Florida in the early case of Insurance Co. of North America v. Erickson[1] to be as follows:
"Upon the execution and delivery of the contract of sale set up in the defendant's plea the vendor, Erickson, became the holder of the legal title, in trust for his vendee, Burch, as security for the deferred purchase price due from the latter to the former, and the vendee, Burch, held the purchase price as trustee for his vendor. 2 Story's Eq.Juris. (13th Ed.) § 789. We do not think that the retention of possession of the land by the vendor, Erickson, makes any material difference in his status as owner so as to effect [sic] the question under discussion. He had the right to stipulate, as he did do, for the retention of possession until the purchase money was paid; but this did not render the transaction any the less an unqualified sale of the property on his part and purchase thereof by his vendee. * * *"
In the Insurance Co. of North America case cited above it was held that the vendee of real property under a contract of purchase and sale is the sole and unconditional owner of the property and must suffer any loss that occurs when improvements on the property are destroyed by fire prior to receiving a conveyance of the land.
To the same effect is the decision of the Supreme Court in Felt v. Morse[2] in which the doctrine enunciated in the Insurance Co. of North America case was followed. In Felt it was held that the loss occasioned by the destruction of a citrus grove from freezing fell on the vendee of the land who was the beneficial owner under a contract of purchase and sale, the loss having occurred before the purchase price was fully paid and legal title conveyed by the vendor.
The doctrine of equitable conversion was recognized and followed by this court in the case of Tingle v. Hornsby[3] wherein we said:
"It has long been the law of this jurisdiction that the vendor's act in executing a contract to convey the legal title to property upon the payment of an agreed *737 purchase price constitutes the vendee as the real beneficial owner, legal title remaining in the vendor as trustee with the obligation to convey upon compliance with the terms of the contract. Under the doctrine of equitable conversion, the vendor's interest thereupon becomes personalty. * * * Thus, it is evident that in the instant case, the decedent's fee simple interest in the subject realty was converted by operation of law to a naked legal title held as a security interest and metamorphosed into a personal right or chose in action."
Again, in the case of McNeill v. McNeill,[4] the doctrine of equitable conversion was applied in determining how fire insurance proceeds should be allocated after fire had destroyed an improvement located on property which was the subject of a contract of purchase and sale. In that case this court stated:
"The property settlement agreement entered into between the parties and confirmed by interlocutory order of the court was tantamount to a contract of purchase and sale whereby the wife agreed to convey to the husband her interest in the real estate in consideration of a purchase price of $4,000.00. Under the doctrine of equitable conversion a vendor's act in executing a contract to convey the legal title to property upon the payment of an agreed purchase price constitutes the vendee as the real beneficial owner, legal title remaining in the vendor as trustee with the obligation to convey upon compliance with the terms of the contract. The equitable conversion doctrine is a creature of equity unknown to law and is an application of the maxim that equity treats that as done which ought to be done."
In a recognized treatise on the law of real property it is said:
"Perhaps the most debated question in the law of vendor and purchaser is that of the allocation of the burden of loss between the parties in cases where the contract does not specifically provide for the matter. This question may arise in a variety of ways. The most usual form of loss encountered in the cases is that resulting from fire which destroys buildings or other structures on the land contracted to be sold, but injury to the premises by flood, windstorm or collapse of buildings due to natural causes raises the same question. In no reported case does the land contracted to be sold appear to have been physically destroyed, but there are numerous cases in which the premises have been taken by eminent domain, leaving only a claim to a money award. * * *
"At least five different views as to the allocation of the burden of fortuitous losses as between vendor and purchaser have been advanced, and at least three of these have substantial support in the cases. (1) The view most widely accepted is that first enunciated in Paine v. Meller, that from the time the vendorpurchaser relation arises the burden of loss is on the purchaser even though the vendor may be in possession. This view applies with strict logic the theory of equitable conversion, holding the purchaser to have `become in equity the owner of the premises' so that `they are his to all intents and purposes.' * * *"[5]
From the foregoing authorities it appears irrefragable that upon execution of the contract by Arko and Jackson the latter became seized of the beneficial title to the land in question and thereby became obligated to pay Arko the full purchase price agreed upon after Arko had made the improvements on the property in accordance with the terms and provisions of the agreement. Jackson's interest in the land thus acquired was subject to sale on execution; could have been mortgaged or made the subject of a trust; would have been sufficient *738 to sustain a claim for homestead; constituted an estate of inheritance which, upon his death, would have descended to his heirs and not passed into his estate; would have entitled him to recover damages for any trespass to the land, and requires that he bear any losses due to fortuitous events.[6] Arko thereby became the holder of the naked legal title which it held in trust as security for the payment of the balance of the purchase price agreed upon between the parties. It appears equally clear that any enhancement in the value of the land after execution of the contract would redound to the benefit of the purchaser Jackson, and any loss which thereafter occurred would be borne by Jackson.
The question which we must determine is whether the loss of the real estate to the housing authority of the City of Cocoa as a result of the eminent domain proceeding constituted a loss or destruction of the property within the meaning and intent of the decisions hereinabove cited so as to cast such loss on the vendee Jackson, or whether such loss of the property amounted to a fortuitous circumstance rendering mutual performance by the parties under the contract impossible thereby constituting a cancellation thereof and requiring that the parties be returned to the status they occupied prior to the time the contract was executed.
Under the doctrine of equitable conversion the vendor in a contract of purchase and sale holds the naked legal title as security for the satisfaction of the vendor's lien retained on the land forming the subject of the contract. Such vendor's lien occupies a status comparable in some respects to a purchase money mortgage held by the seller of land as security for such unpaid balance of the purchase price as may be due him. In the case of Seaboard All-Florida Ry. v. Leavitt,[7] a part of mortgaged land was condemned under the power of eminent domain in a suit wherein the mortgagee was not joined as a party defendant. In a subsequent action brought by the mortgagee to foreclose his mortgage against the entire parcel of land covered by his mortgage, the Supreme Court said:
"While the mortgage lien here involved was not displaced or destroyed by the condemnation proceeding, and the mortgagee was not confined to enforcing her lien against the award, our conclusion is that under the circumstances of this case the mortgagee is only entitled to compensation from the railway company to the extent of the impairment of the security afforded by the lien by reason of the appropriation by the railway company of that portion of the mortgaged property comprised within the right of way strip, as of the date of such appropriation, as decided below. * * *"
From the foregoing decision it appears to be the law of this state that where land subject to a vendor's lien is appropriated under the power of eminent domain, the condemnation proceeding does not destroy the lien nor does it affect the right of the vendor to seek enforcement of his lien against the vendee for the full amount of the unpaid purchase price.
The general rule governing the relationship of parties to an executory contract of purchase and sale involving land which is appropriated under the power of eminent domain before the contract is fully executed is stated by Nichols in his work on Eminent Domain as follows:
"Where the vendee of the land under an executory contract is in possession, and having made the payments agreed upon, is entitled to a deed, although he has not yet received one, it is generally held that he is the owner in respect to eminent domain proceedings.
"A more difficult question arises when a contract has been made for the sale *739 of land at a certain price which is less than its fair market value as subsequently fixed, and the intending purchaser has made an initial payment but before the date fixed for conveyance the land is taken by eminent domain. The contract is, of course, rendered impossible of performance and the purchaser is not entitled to damages from the vendor for his failure to carry out his agreement. It would seem, however, that the purchaser is entitled to compensation from the condemnor for the taking of his equitable interest in the land, and, if the award is greater than the contract price, the vendor should receive the exact amount for which he had agreed to sell the property and the purchaser should be awarded the balance. The reasoning of the court is predicated upon the fact that such executory contract is considered, in effect, an assignment of the award to the purchaser who is considered the equitable owner."[8]
In Summers v. Midland Co.[9] property which was the subject of an executory contract of purchase and sale was condemned by the City of Duluth for a restricted residence district thereby preventing the vendee from utilizing the property for its intended purpose. The vendee brought suit against the vendor seeking rescission of the contract and return of the amount paid by him on the purchase price. In denying plaintiff the relief sought the Supreme Court of Minnesota said:
"We must assume that the parties make such contract in contemplation that the sovereign power of the state may intervene and substitute value for a part of the land. No person is presumed to covenant against the acts of sovereignty. The vendee takes the equitable title, subject to the exercise of the right of eminent domain, just as though the title had been conveyed to him. The taking of land in condemnation proceedings is, in a legal sense, a purchase and sale, and the vendee in the contract, being the equitable owner, must be considered as the vendor in such forced sale. In theory at least such forced sale provides full compensation. He then should receive the award. The vendee being the equitable owner what the sovereign takes under the power of eminent domain belongs to the vendee and not to the vendor. If the security of the vendor is impaired by reason thereof his rights must be protected, and if the vendor should receive the award he must hold it as trustee for the vendee. On principle the vendee does not suffer any loss, upon our theory of the law, because, in condemnation, any damage is fully compensated. If the vendor's security is not impaired he is not interested at all in the sovereign act  that is something that concerns the vendee, who is for all practical purposes the owner. So considered the matter is simple."
In Clark v. Long Island Realty Co.,[10] property which was the subject of a contract of purchase and sale was acquired by the City of New York under the power of eminent domain. The vendee brought suit seeking recovery of the payments made by him under the contract. In denying the relief sought the court said:
"It is not necessary to cite authority for the familiar proposition that the vendee under an executory contract of purchase and sale has the equitable title; the vendor holding the legal title merely as security for the payment of the purchase money. The plaintiff's theory is that the contract was abrogated by the condemnation proceedings; but no authority is cited in support of that proposition, and no reason is urged or suggests itself to *740 us for so holding. The contract is not abrogated. Randolph's Law of Eminent Domain, § 170. The damages awarded in the condemnation proceeding belong of the vendee, subject, of course, to the lien of the vendor; and, if the latter receives them, he does so as trustee for the former. McIntyre v. Easton and Amboy R.R. Co., 26 N.J. Eq. 425; Pinkerton v. Boston & Albany R.R. Co., 109 Mass. 527; Stevenson v. Loehr, 57 Ill. 509, 11 Am.Rep. 36.
"This is not a case of thrusting the equities of a party on him, but of holding him to his contract. The vendor is able to give him all he contracted to. The state has intervened, and under its right of eminent domain substituted for the land its value. In legal effect, as between vendor and vendee, the award becomes the subject of the conveyance. The plaintiff took the equitable title, subject to the exercise of the right of eminent domain, precisely as though the legal title had been transferred; and the possibility of the land being taken for public use should be deemed to have been within the contemplation of the parties. The taking of land by proceedings in invitum is in a legal sense a purchase and sale (Vandermulen v. Vandermulen, 108 N.Y. 195, 15 N.E. 383), and, of course, the equitable owner must be deemed the vendor. * * *"
In harmony with the above-cited decisions is that of Hill v. Doerfler[11] in which the vendee in an executory contract for purchase and sale sought rescission of the contract and return of the amount of purchase money payments made thereunder on the ground, among others, that subsequent to the execution of the contract a part of the land had been condemned by the county for a road right of way. In rejecting the vendee's contention that it was entitled to rescission under the circumstances mentioned, the Supreme Court of Oregon said:
"The principles aforementioned which treat a purchaser in possession, under an executory contract of sale, as an owner are of frequent application in this state. No citation of authority should be needed to warrant the statement that a covenant of warranty or for quiet enjoyment is not breached when the right of eminent domain takes all or a right of the property affected by the covenant. We believe that a conclusion that the taking by Marion county did not relieve the purchasers from their contract would be in harmony with the principles of law and equity reviewed above. Without setting forth further a statement of our reasoning, we express our opinion that the taking of the road strip by Marion county did not authorize the plaintiffs to maintain this suit."
From the foregoing discussion it is our view that the condemnation of the land forming the subject matter of the executory contract of purchase and sale between Arko and Jackson does not warrant rescission of the contract on any recognized equitable principles. Arko holds a vendor's lien for the amount due it on the purchase price of the property in accordance with the terms of the contract. Jackson is liable to Arko for the agreed purchase price of the land, less the deductions and setoffs to which he is entitled as hereinafter set forth. If it is determined that under their assignment from Jackson the appellees Wood and Coleman are in privity with Arko, then they would share a joint liability with Jackson for the unpaid purchase price. In computing the amount due from the vendees to the vendor there shall first be deducted from the agreed purchase price the amount paid by the vendees under the contract, plus the amount received by the vendor as proceeds of the judgment rendered in the eminent domain proceeding. *741 Under the contract the vendor was obligated to construct and install on the property all sewers, water, streets, and curbs as may be required by the Federal Housing Administration, the City of Cocoa and Brevard County. The cost of these improvements was taken into account in determining the total amount of purchase price which the vendees agreed to pay. The reasonable costs and expenses which would necessarily have been incurred by Arko in constructing and installing the mentioned improvements must be ascertained, and the total amount thereof deducted from the total contract price. In addition, it is only reasonable to assume that had this transaction proceeded to a conclusion Arko would have necessarily incurred other expenses including, but not limited to, the procurement of abstracts of title or title insurance, documentary stamps, attorneys fees, engineering costs and other costs incidental to fulfilling its obligations under the contract. The total amount of these expenses must also be determined and deducted from the total contract price because such expenses were necessarily anticipated in fixing the selling price of the land, and are expenses which the vendor has been relieved from incurring. There furthermore appears to be a deficiency in the amount of land agreed to be conveyed, the value of which must be deducted from the agreed purchase price. When the total amount of all deductions and setoffs hereinabove itemized has been determined, any difference between their total and the total agreed purchase price should be awarded Arko against those vendees whom the court shall determine are liable therefor under the contract of purchase and sale and assignments thereof. If, however, the total amount of such deductions and setoffs exceed the agreed purchase price, then judgment for such excess shall be awarded the vendees against Arko. The interlocutory order striking appellant's defenses, counterclaim and cross-claim filed against the appellees herein and the summary final decree appealed are reversed and the cause remanded for further proceedings in accordance with the views expressed herein.
CARROLL, DONALD, K., J., concurs.
RAWLS, C.J., dissents.
RAWLS, Chief Judge (dissenting).
A review of this record leads me to the conclusion that the trial judge was correct in determining that the doctrine of equitable conversion was not applicable to the facts in this case. I have no argument with the general principles of law quoted and cited by the majority; however, it is my view that such are not applicable to the facts of this case.
On November 29, 1961 Morris Kerr of Kerr Builders, Inc., and Secretary of Arko, executed as trustee an instrument entitled "Contract for Sale and Purchase" wherein he agreed to purchase approximately 18 acres of land "subject to availability of sewers and water * * * and approval of F.H.A. commitments." Exactly one month later, December 29, 1961, Arko and Jackson executed the instrument entitled "Agreement", which is the subject of this litigation, wherein Jackson agreed to purchase the same property in the form of developed lots. Jackson was acting as trustee for himself, John T. Wood and Middle Florida Construction Company. The record shows that Jackson and Wood were likewise in the construction business. Jackson was president of Model City Homes, Inc. and Wood's firm was named John T. Wood Homes, Inc.
By that agreement Arko as the contract purchaser of the land agreed to plat the property into a subdivision containing approximately 69 lots, to secure plat approval of the Federal Housing Authority and the City of Cocoa, and to install "all improvements, sewers, water, streets and curbs for said lots" which are required by F.H.A. and the City for the construction of residence dwellings on the lots.
*742 Jackson as purchaser agreed to purchase the improved lots. The purchase of the first 25 lots was to take place "no later than 30 days after the installation of utilities in said lots * * * except that the final topping on roads need not have been completed", the purchase of the next 25 lots within the following 9 months and all remaining lots within 6 months after the conveyance of the second group of lots. The total compensation to be paid by the purchaser was $2,800 per lot. In accordance with the agreement the purchaser paid $5,000 at the time of the execution and an additional $12,920 at the time F.H.A. commitment and City approval were obtained for the plat. By the terms of the agreement this earnest money was to be considered as $280.00 toward the purchase price of each of the lots. The agreement further contains provisions which contemplate construction loans, permanent mortgage loans and construction mortgages.
Thus, we see that the instrument here litigated was not a simple Contract for Sale and Purchase but was actually an Agreement which was in substantial part executory in the sense that many conditions were necessary to be performed by the vendor prior to closing. The undisputed facts in this record disclose: (1) that the purchasers involved are in the housing or construction business; (2) that the terms of the agreement contemplate the sale and purchase of improved lots, not a raw tract of land; (3) that the purchase price was fixed in an amount per lot; (4) and that the sale of the lots was to take place at a future date when the improvements contracted to be performed by the seller were substantially completed upon the property. Nowhere in this contract has the purchaser agreed to buy the tract of land which was the subject of the condemnation proceedings. The agreement involved the purchase of lots on paved streets complete with utilities and F.H.A. commitments. The uncontroverted facts are that the subject of the sale, the improved lots, never came into being and that Arko was prevented from improving the property according to its agreement because that property became the subject of an eminent domain proceeding.
The majority opinion holds that the chancellor as a matter of law must apply the doctrine of equitable conversion to the foregoing factual situation. I do not understand such a premise to be applicable here, especially considering the relatively small amount involved as a "known", i.e. $17,920, and the "unknown" cost of the proposed extensive improvements, which admittedly must be computed upon proof of what it "might have cost." A simple analysis of the extensive directions to the chancellor as stated by the majority opinion, which are based upon the theory that the doctrine of equitable conversion, as a matter of law, applies to the facts in this case, illustrates the impracticability, if not impossibility, of attaining an equitable dispositon of the cause, in a manner other than the practical disposition made by the chancellor by the decree appealed. In my opinion the majority has made a simple problem extremely complex by overextending basic concepts surrounding the doctrine of equitable conversion. And in doing so, the majority has overlooked cardinal equitable principles, viz.:
"The doctrine of equitable conversion, which obtains in Florida, is a creature of equity, unknown to the law, and is an application of the maxim that equity treats that as done which ought to be done.
* * * * * *
"The application of the doctrine depends somewhat upon the circumstances in which it is invoked, since the doctrine is not a fixed rule of law but proceeds upon equitable principles which take into account the result to be accomplished. The doctrine is most frequently applied in solving questions concerning the validity and execution of trusts, the legal character of the interest of the beneficiaries, the devolution of property as between *743 real and personal representatives, and for other similar purposes.[1]
* * * * * *
"The purpose of the doctrine is to give effect to the intention of the testator, settlor, or contracting parties, and it will not be given an effect contrary to such intention, nor will it be invoked where such intention fails or is incapable of accomplishment by reason of illegality, lapse, or other cause.[2]
* * * * * *
"Where property passes by force of contract, it is generally held that the conversion operates from the execution of the contract. However, this rule will not prevail where its application would defeat the apparent intention of the parties."[3]
The doctrine of conversion is based on the principle that equity regards things as directed or agreed to be done as having been actually performed when nothing has intervened which ought to prevent a performance. It does not exist as a matter of right and is not applicable to all circumstances. It is a fiction invented by courts of equity to be applied only when courts of justice require its exercise. When it arises from a contract, as distinguished from a will, the general rule is that the legal fiction is based upon the presumed intent of the parties.[4]
In my opinion the chancellor was well within his range of discretion to find that these parties did not by their agreement intend equitable title to pass upon the execution of the contract. Such conclusion is buttressed by the voluminous proof in this record that Arko at all times during the eminent domain proceeding took the position that it was the fee simple owner of the subject tract. Only after the award of damages was made in the eminent domain proceeding did Arko change its position and attempt to assert a claim based upon the doctrine of equitable conversion.
Implicit in the doctrine of equitable conversion is the proposition that where the contract is rendered incapable of performance by circumstances beyond the control of the parties and where the court of equity is in the position to place the parties in status quo, a decree having that effect should be sustained as a proper judicial discretion. It is my conclusion that the chancellor was correct in striking those defenses which alleged matters pertaining to the doctrine of equitable conversion, that he reached an equitable result, and that his decree should therefore be affirmed.
NOTES
[1] Insurance Co. of North America v. Erickson, 50 Fla. 419, 39 So. 495, 498; See also Aycock Bros. Lumber Co. v. First Nat. Bank of Dothan, 54 Fla. 604, 45 So. 501.
[2] Felt v. Morse, 80 Fla. 154, 85 So. 656.
[3] Tingle v. Hornsby, (Fla.App. 1959) 111 So.2d 274, 276.
[4] McNeill v. McNeill, (Fla.App. 1961) 135 So.2d 785, 788.
[5] 3 American Law of Property § 11.30 (Casner ed. 1952).
[6] Summers v. Midland Co., 167 Minn. 453, 209 N.W. 323, 46 A.L.R. 816.
[7] Seaboard All-Florida Ry. v. Leavitt, 105 Fla. 600, 141 So. 886, 891.
[8] 2 Nichols on Eminent Domain § 5.21(1), (3rd ed. 1963).
[9] Summers v. Midland Co., supra note 6, 209 N.W. at 324.
[10] Clarke v. Long Island Realty Co. (126 App.Div. 282), 110 N.Y.S. 697, 698; See also Reife v. Osmers, 252 N.Y. 320, 169 N.E. 399, 67 A.L.R. 1101.
[11] Hill v. Doerfler, 150 Or. 628, 47 P.2d 260, 266.
[1] 12 Fla.Jur., Equitable Conversion § 2.
[2] Id. § 3.
[3] Id. § 5.
[4] Clay v. Landreth, 187 Va. 169, 45 S.E.2d 875, 175 A.L.R. 1047 (1948).