**In re Thomas Gene READY, and Barbara M. Ready, Debtors.**

**No. 99–7964–8G7.**

United States Bankruptcy Court, M.D. Florida, Tampa Division.

Sept. 7, 2001.

Buddy D. Ford, Tampa, FL, for Debtors.

Donna A. Bucella, Mac Cauley, United States Attorneys, Philip Doyle, Trial Attorney, Tax Division, U.S. Dept. of Justice, Washington, DC, for United States.

Stephen L. Meininger, Meininger, Bianco & Porto, P.A., Tampa, FL, Chapter 7 Trustee.

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND MEMORANDUM OPINION

PAUL M. GLENN, Bankruptcy Judge.

**THIS CASE** came before the Court for final evidentiary hearing to consider the Motion for Order to Show Cause filed by the Debtors, Thomas Gene Ready and Barbara M. Ready.

The Debtors filed a petition under chapter 7 of the Bankruptcy Code on May 14, 1999, and received their Discharge on

August 26, 1999. In the Motion under consideration, the Debtors assert that the Internal Revenue Service (IRS) willfully violated the permanent injunction contained in the Discharge by virtue of its failure to release a tax lien on property acquired by the Debtors after the entry of the Discharge. Consequently, the Debtors request that the Court determine whether the IRS should be sanctioned as a result of such willful violation.

In response, the IRS contends that it is entitled to enforce its tax lien against the Debtors' property because the Debtors had acquired a right or interest in the property prior to the filing of the chapter 7 petition. According to the IRS, such right or interest is subject to the lien pursuant to § 6321 and § 6322 of the Internal Revenue Code and § 522(c)(2)(B) of the Bankruptcy Code.

## Background

Prior to July of 1984, the Debtors owned and lived in a home located at 4728 Luce Road in Lakeland, Florida.

Also prior to July of 1984, David and Joy Lively (collectively, the Livelys) owned and lived in a home located at 514 Laurel Lane, Lakeland, Florida.

On July 31, 1984, the Debtors and the Livelys entered an Agreement. The Agreement provided:

> WHEREAS, both parties are owners of certain real property located in Polk County Florida. Each property has an existing Mortgage attached to it and further these Mortgages cannot be assumed until both parties have qualified and both parties wish to obtain occupancy of the other parties property prior to qualifing (sic).
>
> It is mutually agreed by and between both parties on this date to execute Warranty Deeds, each party conveying their respective property to the other party. Until such time as both parties qualify for the assumption of the respective mortgages these Deeds will not be recorded but will be held in escrow.
>
> Until such time as the parties qualify for the respective Mortgages READY will pay to LIVELY the sum of $1,150.00 per month which will be in turn paid by LIVELY to his mortgage company as payment of the monthly installment. LIVELY will pay to READY the sum of $440.95 per month which will be in turn paid by READY to his mortgage company as payment of the monthly installment.
>
> Further, that each party agrees that this agreement constitutes an escrow closing and that the above referenced Deeds will be recorded at the expense of READY at the time of the Mortgage assumptions. . . .
>
> .     .     .     .     .
>
> READY has provided LIVELY with a check in the amount of $10,000.00 and the above referenced Warranty Deed as payment in full for LIVELY property. LIVELY has provided the above referenced Warranty Deed as payment in full for READY property.

(IRS Exhibit 2; Debtors' Exhibit 1). The Debtor, Mr. Ready, testified that he paid the Livelys the sum of $10,000 at the time of the transaction, as set forth in the Agreement.

Also on July 31, 1984, apparently in connection with the Agreement, the Livelys signed a Warranty Deed related to the Laurel Lane property. (IRS Exhibit 9; Debtors' Exhibit 2). The Warranty Deed states that the Livelys "granted, bargained and sold" the Laurel Lane property to the Debtors for good and valuable consideration. The disposition of the original Warranty Deed is unclear from the record, although it appears that the Deed may

have been delivered to an escrow agent and subsequently lost. In any event, the Warranty Deed was never recorded.

The following year, on May 13, 1985, the Debtors signed a Warranty Deed related to the Luce Road property. (IRS Exhibit 12). According to this Warranty Deed, which was also signed in connection with the Agreement, the Debtors transferred the Luce Road property to an individual identified as Tom A. Benefield. After the Debtors had agreed to convey the Luce Road property to the Livelys pursuant to the Agreement, the Livelys had assigned their interest in the property to Mr. Benefield. The Warranty Deed from the Debtors directly to Mr. Benefield was recorded on May 21, 1985.

The Debtors obtained possession of the Laurel Lane home in August of 1984, shortly after the Agreement with the Livelys was executed. Since that time, a period of more than sixteen years, the Debtors have lived in the property as their home, and have paid the mortgage payments, property taxes, and insurance premiums on the property. The mortgage obligation, property tax records, and insurance policies remained in the name of the Livelys for the entire sixteen-year period, however, notwithstanding such payment by the Debtors. In addition to the mortgage, taxes, and insurance, the Debtors also paid all maintenance expenses with respect to the property, and deducted the mortgage interest payments on their federal income tax returns.

The IRS contends that the Debtors failed to pay income taxes for the 1990 tax year in the approximate amount of $42,003.66. The taxes were assessed on February 3, 1992, and a Notice of Federal Tax Lien was filed on June 12, 1992. (IRS Exhibit 5).

On August 4, 1992, the Debtor, Mr. Ready, signed a letter addressed to the Livelys. The letter states:

> As per your request I hereby acknowledge that all financial responsibility regarding the property located at 514 Laurel Lane, Lakeland, Florida are solely that of mine, Thomas Gene Ready and my wife, Barbara M. Ready.

(IRS Exhibit 3).

On January 9, 1995, a second Notice of Federal Tax Lien was filed by the IRS. (IRS Exhibit 6). The second Notice relates to income taxes assessed for the 1991 tax year in the amount of $25,543.55.

On May 14, 1999, the Debtors filed a petition under chapter 7 of the Bankruptcy Code. The Laurel Lane property was not listed as an asset either on the Debtors' Schedule of Real Property, or on the Debtors' "Schedule C—Property Claimed as Exempt." The property is identified on the Statement of Financial Affairs, however, as "property held for another person," and 514 Laurel Lane is listed as the Debtors' residential address.

On June 24, 1999, the Debtors filed a Complaint against the IRS in the Bankruptcy Court to determine the dischargeability of their tax liability for 1990 and 1991. On October 27, 1999, a Final Judgment was entered in the adversary proceeding. The Final Judgment provided that the Debtors' income tax liabilities for the 1990 and 1991 tax years were not excepted from the Debtors' discharge, and therefore were dischargeable in their chapter 7 case. The Final Judgment further provided:

> Any federal tax liens with respect to the plaintiffs' assessed federal income tax liabilities for the years 1990 and 1991, notices of which have been properly filed, shall remain in full force and effect as to any property, and any rights to property, belonging to the plaintiffs

as of the filing of plaintiffs' bankruptcy petition.

(Final Judgment on Complaint to Determine Dischargeability, Adv. No. 99–380, Doc. 21).

The Debtors received their Discharge on August 26, 1999.

In November of 1999, the Debtors employed Stephen H. Artman, Esquire, to represent them in connection with the Laurel Lane property.

On December 30, 1999, the Livelys signed a Quitclaim Deed that had been prepared by attorney Artman. Pursuant to the Quitclaim Deed, the Livelys transferred the Laurel Lane property to the Debtors. The Quitclaim Deed was recorded on March 6, 2000. (IRS Exhibit 1; Debtors' Exhibit 5).

On January 25, 2000, the Debtor, Gene Ready, signed a letter addressed to David Lively. In the letter, the Debtor stated as follows:

> David Lively and I entered into a contract to purchase his home at 514 Laural [sic] Lane in Lakeland FL. I was unable to qualify for a mortgage. David allowed me to make the payments until I could qualify. It was my responsibility to make the monthly payments, not Davids. . . .

(IRS Exhibit 4). Mr. Ready testified that he intended to purchase the Laurel Lane home at the time that the Agreement was originally executed in July of 1984. At that time, he was a member of the State House of Representatives, and was confident that he would be able to refinance the property. Mr. Ready was defeated in his bid for re-election shortly after the Agreement was signed, however, and experienced financial setbacks as a result of the loss. Consequently, the Debtors were unable to qualify for refinancing or assumption of the mortgage, as contemplated by the Agreement.

### Issue

The issue in this case is whether the IRS is entitled to enforce its tax lien on the Laurel Lane property, after the Debtors' personal liability for the underlying tax has been discharged, even though the Debtors did not have record ownership of the property at the time that they filed their chapter 7 petition. If the Debtors had acquired a right or interest in the property prior to the filing of the bankruptcy case, however, and such right or interest is sufficient to entitle the IRS to enforce the lien, the IRS has not violated the permanent injunction contained in the Debtors' discharge, and the Debtors' request for sanctions should be denied.

### Discussion

■ Section 6321 of the Internal Revenue Code provides:

### Chapter 64—Collection

### Subchapter C—Lien for Taxes

### § 6321. Lien for taxes

If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon *all property and rights to property*, whether real or personal, belonging to such person.

(Emphasis supplied). The lien imposed by § 6321 arises at the time that the tax is assessed. 26 U.S.C. § 6322.

Where a Notice of Federal Tax Lien has been filed, the lien attaches to "all property and rights to property" belonging to the taxpayer. If the taxpayer subsequently commences a bankruptcy case, the lien

remains attached to all property owned by the taxpayer at the time that the bankruptcy petition was filed. It is well-established that any such existing lien survives the bankruptcy case with respect to the prepetition property, even if the debtor's personal liability for the underlying tax is discharged [1] in the bankruptcy case.

> [T]he Supreme Court ruled that a preexisting lien on property remains enforceable against that property even after an individual's personal liability has been discharged. *Dewsnup v. Timm,* 502 U.S. 410, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992). Although the IRS cannot proceed to collect from the Debtor personally, it may satisfy the lien by levying against the Debtor's property.

*In re Deppisch,* 227 B.R. 806, 808 (Bankr. S.D.Ohio 1998). See also *In re Dinatale,* 235 B.R. 569, 573–74 (Bankr.D.Md.1999).

■ Pursuant to the terms of the statute, the lien applies to "all property and rights to property" of the taxpayer. The language of § 6321 "is broad and reveals on its face that Congress meant to reach every interest in property that a taxpayer might have." *Drye v. United States,* 528 U.S. 49, 56, 120 S.Ct. 474, 145 L.Ed.2d 466 (1999)(quoting *United States v. National Bank of Commerce,* 472 U.S. 713, 719–20, 105 S.Ct. 2919, 86 L.Ed.2d 565 (1985)). "Stronger language could hardly have been selected to reveal a purpose to assure the collection of taxes." *Glass City Bank v. United States,* 326 U.S. 265, 267, 66 S.Ct. 108, 90 L.Ed. 56 (1945).

### A. "Property and rights to property" under Florida law.

■ The nature and extent of a taxpayer's property and rights to property are determined in accordance with state law.

"The United States Supreme Court ruled that the extent to which a taxpayer has 'property' or 'rights to property' to which a tax lien can attach is determined by state law." *In re Jeffrey,* 261 B.R. 396, 398 (Bankr.W.D.Pa.2001)(citing *Aquilino v. U.S.,* 363 U.S. 509, 512–13, 80 S.Ct. 1277, 4 L.Ed.2d 1365 (1960)). "Thus, in order to determine whether property is subject to a federal tax lien, 'state law controls in determining the nature of the legal interest which the taxpayer had in the property.'" *Craft v. The United States,* 140 F.3d 638, 641 (6th Cir.1998)(citing *Aquilino, supra,* and *Morgan v. Commissioner,* 309 U.S. 78, 60 S.Ct. 424, 84 L.Ed. 585 (1940)).

In this case, the Debtors and the Livelys entered into a written Agreement dated July 31, 1984. The Agreement provided that it was "mutually agreed by and between both parties on this date to execute Warranty Deeds, each party conveying their respective property to the other party." The Agreement further provided that the Debtors had provided the Livelys with the sum of $10,000 and a Warranty Deed to their former home "as payment in full for the Lively property." Finally, the Agreement provided that the Warranty Deeds that were to be exchanged would be held in escrow until the properties were refinanced. There are two subscribing witnesses to the Agreement.

The Agreement constitutes a contract pursuant to which the Debtors agreed to purchase the Laurel Lane property from the Livelys in exchange for their former home located on Luce Road plus the sum of $10,000. The Debtors took possession of the property, and have paid all expenses associated with the home, since shortly after the Agreement was entered. The

---

1. Of course, the discharge of the Debtors does not extinguish the debt; the discharge operates as an injunction against the recovery of the debt as a personal liability of the Debtors. 11 U.S.C. § 524(a)(2).

Deed to the home was not recorded, however, due to the Debtors' inability to obtain refinancing. Nevertheless, the Debtors continued to occupy the Laurel Lane property, and were paying all expenses related to the home, in May of 1999 when they filed their bankruptcy case.

The Court finds that the Debtors were the equitable owners of the property at the time that they filed their chapter 7 petition. The Agreement constitutes a contract by the Debtors to purchase the Laurel Lane property.

■ Under Florida law, a contract for the purchase and sale of real property creates an equitable interest in the purchaser, and the purchasers become the beneficial owners of the property. *Waldorff Insurance and Bonding, Inc. v. Eglin National Bank,* 453 So.2d 1383, 1385 (Fla. 1st DCA 1984). A purchaser under an agreement to convey real property acquires equitable title to the property. *Department of Revenue v. Mesmer,* 345 So.2d 384, 386 (Fla. 1st DCA 1977).

When a seller executes a contract to convey property, the purchaser becomes the "real beneficial owner" of the property. *Arko Enterprises, Inc. v. Wood,* 185 So.2d 734, 737–38 (Fla. 1st DCA 1966). Such real, beneficial ownership carries with it certain rights generally incident to property ownership. The beneficial interest acquired by a purchaser, for example, would be subject to sale on execution, could be made the subject of a trust, would pass to the purchaser's heirs upon his death, and would entitle the purchaser to recover damages for any trespass to the property. *Arko Enterprises, Inc. v. Wood,* 185 So.2d at 737–38 (Fla. 1st DCA 1966).

The Debtors acquired a beneficial or equitable interest in the Laurel Lane property as a result of the Agreement dated July 31, 1984.

## B. Application of federal tax lien.

As set forth above, § 6321 is purposefully broad and designed to reach every interest in property that a taxpayer might have. *Drye v. United States,* 528 U.S. at 56, 120 S.Ct. 474.

■ The lien imposed pursuant to § 6321 of the Internal Revenue Code attaches to equitable interests acquired by taxpayers.

In *Crough v. Scheets,* 1994 WL 409628, at *2 (D.Kan.), for example, the taxpayer had contracted to purchase certain real property from a seller. The taxpayer took possession of the property, although the seller retained legal title. The Court found that the taxpayer acquired an equitable interest in the property at the time of the contract with the seller. The Court further found that tax liens "attach to the equitable interest in real property." *Crough v. Scheets,* 1994 WL 409628, at *2. The primary issue in that case involved the relative priorities as between the tax lien and other interests in the property.

Similarly, in *Cardinal v. United States,* 817 F.Supp. 647 (E.D.Mich.1993), the taxpayer had entered a contract to purchase certain real property, and the IRS subsequently filed a Notice of Federal Tax Lien. The Court found that the taxpayer was "vested with equitable title" to the property at the time that the Notice of Federal Tax Lien was filed as a result of the purchase contract previously entered. The Court further found that a creditor of the taxpayer could "attach a lien to the vendee's [taxpayer's] equity interest" in the property. Consequently, the Court concluded that "the federal tax lien attached to whatever equity interest [the taxpayer] had built up in the property." *Cardinal v. United States,* 817 F.Supp. at 652.

See also *United States v. Big Value Supermarkets, Inc.*, 898 F.2d 493 (6th Cir. 1990)(Tax lien attached to interest acquired by a taxpayer pursuant to a purchase contract).

The tax lien asserted by the IRS applies to the Debtors' equitable interest in the Laurel Lane property.

### Conclusion

The Debtors entered an Agreement on July 31, 1984, pursuant to which they agreed to purchase a home located on Laurel Lane in Lakeland, Florida. As a result of the Agreement, the Debtors became the beneficial or equitable owners of the property in 1984. Their equitable interest is further evidenced by the Debtors' possession of the property, and by the fact that they paid all of the expenses attendant to the property for more than sixteen years.

The IRS filed a Notice of Federal Tax Lien in 1992. The IRS subsequently filed a second Notice of Federal Tax Lien in 1995.

The Debtors filed their petition under chapter 7 on May 14, 1999.

The Court concludes that the Debtors held a beneficial or equitable interest in the Laurel Lane property at the time that they filed the bankruptcy petition. The Court further concludes that the tax liens of the IRS had attached to the Debtors' equitable interest in the property at the time that the bankruptcy case was filed. Finally, the Court concludes that the liens remain attached to the equitable interest even though the Debtors' personal liability for the underlying tax has been discharged, and even though the Debtors did not acquire record ownership of the property until after the bankruptcy case was filed.

Since the IRS should be entitled to enforce its tax lien on the Laurel Lane property, the IRS has not violated the permanent injunction contained in the Debtors' discharge by declining to release the liens, and the Debtors' request for sanctions should be denied.

Accordingly:

**IT IS ORDERED** that the Motion for Order to Show Cause filed by the Debtors, Thomas Gene Ready and Barbara M. Ready, is denied.