Francis J. VEREYKEN and Patricia M.
Vereyken, Plaintiffs–Appellees,

v.

ANNIE'S PLACE, INC., State
of Michigan, Defendants,

United States of America, Internal
Revenue Service, Defendant–
Appellant.

No. 91–1174.

United States Court of Appeals,
Sixth Circuit.

Argued Sept. 17, 1991.

Decided May 21, 1992.

Rehearing Denied July 22, 1992.

Richard B. Learman (argued and
briefed), Bay City, Mich., Richard B. Lear-
man, for plaintiffs-appellees.

Charles M. Greene, Gary R. Allen, Act-
ing Chief (briefed), William S. Estabrook
(argued), David A. Hubbert, U.S. Dept. of
Justice, Appellate Section Tax Div., Wash-
ington, D.C., Michael Hluchaniuk, Asst.
U.S. Atty., Office of the U.S. Atty., Bay
City, Mich., Peter Sklarew, Trial Atty., Tax
Div., U.S. Dept. of Justice, Washington,
D.C., for defendant-appellant.

Before: KEITH and NORRIS, Circuit
Judges; and JOHNSTONE, District
Judge.*

ALAN E. NORRIS, Circuit Judge.

The government appeals the order of the
district court granting summary judgment
to plaintiffs, Francis J. and Patricia M.
Vereyken, in their action to quiet title to
their real property as a result of the
government's assertion of a federal tax lien
against the property.

The Vereykens operated a restaurant in
Bay City, Michigan, which in 1984 they sold
on land contract to Annie's Place, Inc. The
land contract vendee soon experienced fi-
nancial difficulties and failed to pay em-
ployment taxes for the last quarter of 1985
and all of 1986, and federal tax liens were
filed against the restaurant property. The
vendee also fell behind in its payments
under the land contract, and the Vereykens
commenced an action in state court for
forfeiture of the vendee's interest in the
land contract. While they were aware of

---

* The Honorable Edward H. Johnstone, United
States District Judge for the Western District of
Kentucky, sitting by designation.

the federal tax liens, the Vereykens elected not to join the federal government as a party. On May 4, 1987, a "Judgment for Possession After Forfeiture of Land Contract" was entered in the state court by agreement of the Vereykens and Annie's Place. Under the judgment, the vendee was entitled to a ninety-day redemption.

On the last day of the redemption, the vendee filed a Chapter 11 bankruptcy petition in an attempt to reorganize the business. When this attempt failed, and the automatic stay was lifted by the bankruptcy court, the Vereykens obtained from the state court a writ of restitution authorizing them to retake possession of the property.

When the Vereykens failed to obtain from the government a voluntary discharge of tax liens, this action was filed in state court, naming the United States as a party along with Annie's Place and the State of Michigan, which had filed a state tax lien against the restaurant property. When Annie's Place and the State of Michigan failed to appear, default judgments were entered against them, and the government removed the cause to the federal district court. The only issue remaining before the district court, then, concerned the relative claims of the federal government and the Vereykens to the real property. The district court subsequently granted summary judgment to the Vereykens on that issue.

On appeal, the government first argues that the tax liens "attached to the taxpayer's [land contract vendee's] interest in the real property," but that, after the forfeiture of the vendee's land contract interest, the lien remained against the property because the Vereykens' "vendor's lien ... expired." As a general proposition of the law of real property, merger is said to take place when a greater and lesser estate coincide and meet in one person. The government contends that these conditions were met in the instant case.

■ Federal law governs the priority of a tax lien relative to other claims to property. *Aquilino v. United States*, 363 U.S. 509, 513–14, 80 S.Ct. 1277, 1280–81, 4 L.Ed.2d 1365 (1960). However, unless Congress has stated otherwise, state law determines what constitutes a property interest to which a federal tax lien may attach. *United States v. Brosnan*, 363 U.S. 237, 240, 80 S.Ct. 1108, 1110, 4 L.Ed.2d 1192 (1960).

■ The parties agree that in Michigan the vendor under a land contract for the sale of real property retains legal title to the real property subject to an equitable obligation to convey legal title to the vendee upon full payment of the purchase money. In such a transaction, the vendor retains the legal title as security for payment of the purchase price. The government refers to the vendor's interest as a "vendor's lien," but that is far from accurate since legal title is clearly a much greater estate than a lien:

> It is well settled in this State [Michigan] that the vendee in a land contract is vested with the equitable title in the land, and that the legal title remains in the vendor and is held as security for the payment of the purchase price of the land, upon the payment of which the vendee is entitled to a conveyance of the legal title.

*Barker v. Klingler*, 302 Mich. 282, 4 N.W.2d 596, 599 (1942); *see also Gilford v. Watkins*, 342 Mich. 632, 70 N.W.2d 695 (1955).

The nature of the vendee's "equitable title" is analogous to the vendor holding the legal title in trust for the vendee pending full payment, and the vendee becoming in equity the owner of the real property to the extent of payments made. A creditor of the vendee can assert a claim against this "equity." But in the absence of the vendee having built up a sizeable equity as the result of substantial payments on the contract, that remedy holds little promise for the creditor, since his claim would be subject to the vendor's legal title. In this case, the government, as creditor of the vendee, found itself in a most unfavorable position because the vendee had failed to build up any equity.

And so, although the government may be correct in saying that its liens attached to the land contract interest of the vendee, the vendee's equitable title was in effect worthless in dollar terms since there was

nothing to which the liens attached, except perhaps the vendee's right to a deed upon full payment. The government has never asserted that it was willing to pay off the land contract in order to obtain the vendee's equity of redemption. Undaunted by this apparently fatal weakness in its case, the government argues that its liens attached to the vendor's legal title. How its lien against the vendee's equitable title shifted over to the vendor's legal title is not made clear. Instead, the government asserts that the Vereykens' "vendor's lien" expired with the result that they lost their priority over the tax liens. While this may seem a clever argument at first blush, the fact remains that the government has been unable to establish how its liens attached to the vendor's legal title. Its argument about the competing priorities of its tax liens and a vendor's lien is relevant only to the vendee's equitable title, since that is the estate to which both would have attached. Thus even if we were to say that the Vereykens had a vendor's lien against the vendee's equitable title and that lien expired, that would only leave the government with the senior liens against the vendee's equitable title.

The government's merger argument simply does not fit the circumstances of this case. Rather, it addresses a situation where the holder of a lien senior to that of the government later acquires title to the property as the result of an action to enforce its lien. Then, if it can be said that the senior lien merged into the legal title when it was acquired by the holder of that lien, the government can argue that, when the senior lienholder took title, it took subject to the government's pre-existing lien. Since the government would then possess the only lien remaining, it would be in a position to collect its taxes. This is the argument the government made in *United States v. State of Colorado*, 872 F.2d 338 (10th Cir.1989), discussed later in this opinion. But in this case, the Vereykens already had legal title—they did not acquire it after the government filed its lien (or after the equitable title was conveyed to the vendee, for that matter). And so, at best, the government can argue that the Vereykens took back the *equitable* title subject to the government's lien. Accordingly, as pointed out above, it would not advance the government's cause if it could extinguish what it calls the Vereykens' senior "vendor's lien" against the vendee's interest, since that would only place the government first in line against the vendee's valueless equitable interest.

Having concluded that the government cannot prevail by utilizing the doctrine of merger, we now turn to its second argument, that it is nevertheless entitled to priority by operation of 26 U.S.C. § 7425.[1] As relevant to this appeal, that section provides that certain sales of property, and "any forfeiture of a land sales contract" pertaining to property on which the United States has a lien, are "made subject to and without disturbing such lien" if the United States has not been given notice of the sale or forfeiture. The government maintains that, under the statute, the Vereykens repossessed the property "subject to" the tax

---

1. Section 7425 reads in part as follows:
   **(a) Judicial proceedings.**—If the United States is not joined as a party ... a judicial sale ... with respect to property on which the United States has ... a lien....
   (1) shall be made subject to and without disturbing the lien of the United States, ...
   ....
   **(b) Other sales.**— ... a sale of property on which the United States has ... a lien, ... made pursuant to an instrument creating a lien on such property, pursuant to a confession of judgment on the obligation secured by such an instrument, or pursuant to a nonjudicial sale under the statutory lien on such property—
   ....
   (1) shall, ... be made subject to and without disturbing such lien ... if ... the United States is not given notice of such sale....

   ....
   **(c) Special rules.—**
   ....
   (4) **Forfeitures of land sales contracts.**—For purposes of subsection (b), a sale of property includes any forfeiture of a land sales contract.
   **(d) Redemption by United States.—**
   (1) **Right to redeem.**—In the case of a sale of real property to which subsection (b) applies to satisfy a lien prior to that of the United States, the Secretary may redeem such property within the period of 120 days from the date of such sale or the period allowable for redemption under local law, whichever is longer....
   26 U.S.C.A. § 7425 (West 1989).

lien, and thus their interest in the property is subordinate to the liens.

 The Court of Appeals for the Tenth Circuit recently considered and rejected a nearly identical argument. *United States v. State of Colorado*, 872 F.2d 338; *see also Tompkins v. United States*, 946 F.2d 817 (11th Cir.1991); *Security Pacific Mtg. Corp. v. Choate*, 897 F.2d 1057 (10th Cir. 1990); *First American Title Ins. Co. v. United States*, 848 F.2d 969 (9th Cir.1988). In *State of Colorado*, the court first determined that the state had not lost the priority of its state tax lien as the result of the doctrine of merger when it purchased seized property of its debtor at an auction conducted pursuant to state law, but without notice to the United States. It then went on to reject the government's contention that the language of section 7425 automatically elevates junior federal tax liens to priority status. Instead, the court said: "By making property sold without notice 'subject to' the lien of the United States, section 7425 merely preserves federal tax liens from being extinguished through sale of the underlying collateral; it does not otherwise alter ... federal priority rules...." 872 F.2d at 341–42. This court agrees with that analysis.

The government points to cases where section 7425 was applied to give federal tax liens priority over the interests of purchasers from mortgage foreclosure sales held without notice to the government, and argues that these cases point out the error of *State of Colorado*. *See, e.g., Simon v. United States*, 756 F.2d 696 (9th Cir.1985); *Myers v. United States*, 647 F.2d 591 (5th Cir.1981). Actually, the mortgage foreclosure cases are entirely consistent with the Tenth Circuit's reading of the statute. In the mortgage foreclosure situations, the purchasers took "subject to" the government's lien, which was saved from being extinguished by section 7425, and retained its priority over subsequent purchasers.

Here, having its liens saved from being extinguished and retaining whatever priority it had before the forfeiture is of no help to the government because its liens did not attach to the Vereykens' legal title. It

seems to us that, as applied to forfeiture of land contracts, the language of section 7425(b) that says that a forfeiture is made "subject to and without disturbing such lien" means that, in situations where a land contract vendee's equity is forfeited without notice to the United States, the government retains its lien against that equity to the extent that it might be able to assert remedies that would be available to a defaulting land contract vendee, such as redemption or other state law rights that protect accumulated equity. We do not decide that issue, of course, because the government acknowledges that the vendee had not built up any substantial equity, and the government has never sought redemption by paying the purchase price.

For the reasons stated we conclude that the district court did not err in granting summary judgment to the Vereykens. The judgment of the district court is affirmed.