**Fred A. CARDINAL and Gloria M. Cardinal, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**No. 92–CV–73359–DT.**

United States District Court, E.D. Michigan, S.D.

Feb. 26, 1993.

---

Michael Stevenson, Mark Hotz, Pontiac, MI, for plaintiffs.

Michael Davis, Washington, DC, for defendant.

### OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

ROSEN, District Judge.

### I. INTRODUCTION

Plaintiffs Fred and Gloria Cardinal instituted this action to quiet title and remove cloud on title to real estate in Oakland County Circuit Court on May 18, 1992. Defendant timely removed the action to this Court on June 16, 1992 on the grounds that the United States of America is the Defendant.

### II. PROCEDURAL HISTORY

In their original complaint, Plaintiffs allege that Defendant has no interest in the property located at 156 New York in Pontiac, Michigan, because the United States' tax lien on the property is unlawful. After the close of discovery, Plaintiffs moved for summary judgment, insisting that the United States' tax lien on said property is unlawful, because the person against whom the United States ordered a tax assessment had no interest in said property. Defendant filed an opposition to Plaintiffs' motion and a cross-motion for summary judgment, arguing that its tax lien validly attached to a portion of said property.

Having reviewed the parties' respective briefs and the exhibits attached thereto, and having heard counsels' oral arguments January 21, 1992, the Court is now prepared to rule on the parties' cross-motions for summary judgment, and this Opinion and Order sets forth that ruling.

### III. FACTUAL BACKGROUND

Plaintiffs are owners in fee of real property commonly known as 156 New York in Pontiac, Michigan. On August 12, 1986, Plaintiffs entered into a land contract with Kenneth L. Spencer, Jr. for the sale of said property for $13,900. Apparently, Mr. Spencer then assigned his interest in the land contract to New World Group, Inc. ("New World"). Under the terms of the contract, Mr. Spencer made a $2,000 down payment and was to pay the balance in 120 monthly amortization payments of $150, applying an eleven percent annual interest rate, with the balance due as a balloon payment.

Over a year later, on November 2, 1987, Plaintiffs initiated foreclosure proceedings in Oakland County Circuit Court when Mr. Spencer and/or New World failed to make the required payments. Plaintiffs filed an amended complaint on November 30, 1987 indicating that the unpaid principal balance on the land contract was $11,584.54 plus interest accruing at eleven percent per annum. Accordingly, Plaintiffs recorded a notice of Lis Pendens with the Oakland County Register of Deeds on November 30, 1987.

On March 1, 1988, the Internal Revenue Service ("IRS") recorded a Notice of Federal Tax Lien in the Oakland County Register of Deeds against Mr. Spencer in the amount of $146,546.20.

On July 28, 1988, New World executed a quitclaim deed conveying its interest, if any, in 156 New York to Plaintiffs. On July 31, 1988, Mr. Spencer and his wife, Yong C. Spencer, executed a quitclaim deed conveying their interest, if any, in the property to Plaintiffs. At the time the quitclaim deeds were executed, Mr. Spencer owed Plaintiffs $12,419.74 (including interest) pursuant to the land contract.

Plaintiffs claim that Mr. Spencer left the property in dilapidated condition. Specifically, a regression appraisal commissioned by Plaintiffs indicates that the value of the property in its "wasted" condition at the time the quitclaim deed was executed was $15,000.

On March 28, 1990, Plaintiffs entered into a land contract with Steven A. Wagner and Katherine A. White for the purchase of 156 New York for $10,125. Plaintiffs claim the low sale price reflected the poor condition of the property and that the buyers purchased the property subject to outstanding real estate taxes. According to Plaintiffs, at the time the parties executed this land contract they were unaware of the existence of the properly recorded Federal Tax Lien against Mr. Spencer.

Subsequently, Mr. Wagner and Ms. White entered into a purchase agreement for the sale of 156 New York but were unable to convey the property due to the Federal Tax Lien.

## IV. ANALYSIS

### A. THE STANDARDS GOVERNING CONSIDERATION OF A MOTION FOR SUMMARY JUDGMENT.

Summary judgment is proper "if the pleadings, depositions, answer to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

Three 1986 Supreme Court decisions— *Matsushita Electrical Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct.

1348, 89 L.Ed.2d 538 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); and *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)—ushered in a "new era" in the standards of review for a summary judgment motion. These cases, in the aggregate, lowered the movant's burden on a summary judgment motion.[1] According to the *Celotex* Court,

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof.

*Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552.

■ After reviewing the above trilogy, the Sixth Circuit established a series of principles to be applied to motions for summary judgment. They are summarized as follows:

\* Cases involving state of mind issues are not necessarily inappropriate for summary judgment.

\* The movant must meet the initial burden of showing "the absence of a genuine issue of material fact" as to an essential element of the non-movant's case. This burden may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.

\* The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must "present affirmative evidence in order to defeat a properly supported motion for summary judgment."

\* The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.

\* The trial court has more discretion than in the "old era" in evaluating the respondent's evidence. The respondent must "do more than simply show that there is some

---

1. "Taken together the three cases signal to the lower courts that summary judgment can be relied upon more so than in the past to weed out frivolous lawsuits and avoid wasteful trials." 10A C. Wright, A. Miller, M. Kane, *Federal Practice & Procedure,* § 2727, at 29 (1991 Supp.).

metaphysical doubt as to the material facts." Further, "[w]here the record taken as a whole could not lead a rational trier of fact to find" for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is plausible. *See Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir.1989). The Court will apply the above principles in deciding the cross-motions for summary judgment in this case.

## B. *PLAINTIFFS' ARGUMENT IN SUPPORT OF SUMMARY JUDGMENT.*

Plaintiffs argue that since Mr. Spencer had failed to build up any *sizeable* equity in the property located at 156 New York, there was nothing to which the government's tax lien could attach. Plaintiffs rely on the recent Sixth Circuit decision in *Vereyken v. Annie's Place, Inc.*, 964 F.2d 593 (6th Cir.1992) for the proposition that unless a buyer has built up sizeable equity by making substantial payments on a land contract, a creditor of the buyer may not assert a claim against the buyer's equity interest. Thus, Plaintiffs insist that because Mr. Spencer failed to build up any sizeable equity, Mr. Spencer's creditor, the United States, may not assert a claim against Mr. Spencer's interest in the property.

## C. *DEFENDANT'S ARGUMENT IN SUPPORT OF SUMMARY JUDGMENT.*

Defendant argues that the United States' tax lien attached to Mr. Spencer's equitable interest in the property. Defendant insists that Plaintiffs' emphasis on the word "sizeable" from the *Vereyken* decision is misplaced. Instead, Defendant reads *Vereyken* as consistent with precedent in recognizing that a

vendee's creditor may make a claim against the vendee's equity interest in property.

Defendant argues that Mr. Spencer's equity interest in the property was $2,580.26 and, thus, Defendant is entitled to this amount plus interest. Defendant arrived at this amount by relying on Plaintiffs' figures. First, the regression appraisal commissioned by Plaintiffs valued the property at $15,000 on July 28, 1988 (the time New World executed the quitclaim deed). Second, both parties admit that at the time Mr. Spencer executed the quitclaim deed, he still owed Plaintiffs $12,419.74 pursuant to the land contract.[2] Thus, the value of the property, $15,000, minus the amount Mr. Spencer owed Plaintiffs, $12,419.74, equals Mr. Spencer's equity interest in the property—$2,580.26.

## D. *THE UNITED STATES IS ENTITLED TO MR. SPENCER'S EQUITY INTEREST IN THE PROPERTY—$2,315.46.*

### 1. Pursuant to Michigan Law, a Federal Tax Lien Attaches to a Land Contract Vendee's Equity Interest.

■ The United States' federal tax lien attached to Mr. Spencer's equitable interest in 156 New York in Pontiac, Michigan. Pursuant to §§ 6321 and 6322 of the Internal Revenue Code, a valid federal tax lien arose against all of Mr. Spencer's property and rights to property when the IRS made an assessment against Mr. Spencer on October 5, 1987 in the amount of $146,546.20. 26 U.S.C. § 6321.[3] As this Court recently recognized, "Although the IRS lien does not arise until the taxpayer refuses or neglects to pay the tax, the IRS lien relates back to the time the tax is assessed." *Cipriano v. Tocco*, 757 F.Supp. 1484, 1488 (E.D.Mich.1991); 26 U.S.C. § 6322.

> If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and *rights to property*, whether real or personal, belonging to such person.
> 26 U.S.C. § 6321 (emphasis added).

---

**2.** This amount is derived as follows: Mr. Spencer's purchase price was $13,900.00; he made a $2,000 down payment; he reduced the principal by $315.46; therefore, he owed Plaintiffs $11,584.54 at the time of default. Thus, $11,584.54 plus $835.20 in interest due Plaintiffs from the time of default to the time of the quitclaim deed, equals $12,419.74.

**3.** Section 6321 provides:

The initial inquiry is whether Mr. Spencer had an interest in the property at 156 New York to which the tax lien could attach:

> Section 6321 provides that the lien shall be applicable to "all property and *rights to property* whether real or personal, *belonging* to such person." (Emphasis added). We have held that the extent of the tax debtor's interest in the property is determined by state law, and that the lien cannot attach when the debtor has *no* interest.

*Slodov v. United States,* 436 U.S. 238, 259, n. 19, 98 S.Ct. 1778, 1790, n. 19, 56 L.Ed.2d 251 (1978) (citations omitted) (emphasis added); *Cipriano,* 757 F.Supp. at 1488.

Thus, the next question is whether Michigan law recognizes a vendee's equity interest in a land contract as an interest to which a federal tax lien may attach. Many courts have answered this question affirmatively. *See, e.g. Vereyken v. Annie's Place, Inc.,* 964 F.2d 593, 594 (6th Cir.1992); *General Electric Co. v. Levine,* 50 Mich.App. 733, 213 N.W.2d 811, 814 (1973).

In *Vereyken,* land contract vendors brought suit to quiet title as a result of the government's assertion of a federal tax lien against property. *Vereyken,* 964 F.2d at 593. When the land contract vendee failed to pay employment taxes, the IRS filed federal tax liens against the property. The vendee also fell behind in its payments under the land contract, and the vendors brought an action for forfeiture of the vendee's interest in the land contract. After obtaining a judgment for possession after forfeiture of the land contract, the vendors filed their claim to quiet title against the United States, and the district court granted the vendors' motion for summary judgment.

On appeal, the Sixth Circuit discussed the land contract vendee's interest. First, the court recognized that a land contract vendee has an equitable interest in the property. It stated,

> It is well settled in this State [Michigan] that the vendee in a land contract is vested with the equitable title in the land, and that the legal title remains in the vendor and is held as security for the payment of the purchase price of the land, upon the

payment of which the vendee is entitled to a conveyance of the legal title.

*Vereyken,* 964 F.2d at 594 (quoting *Barker v. Klingler,* 302 Mich. 282, 4 N.W.2d 596, 599 (1942)).

Having established that a land contract vendee is vested with equitable title, the court next explained that a creditor of the vendee could attach a lien against the vendee's equitable interest. The court explained,

> The nature of the vendee's 'equitable title' is analogous to the vendor holding legal title in trust for the vendee pending full payment, and *the vendee becoming in equity the owner of the real property to the extent of payments made. A creditor of the vendee can assert a claim against this 'equity.'* But in the absence of the vendee having built up a sizeable equity as the result of substantial payments on the contract, that remedy holds little promise for the creditor, since his claim would be subject to the vendor's legal title.

*Vereyken,* 964 F.2d at 594 (emphasis added).

In that case, however, the court affirmed the lower court and held that the federal lien could not attach to the vendee's equitable interest in the property, because the vendee had no equity interest at all. The court stated,

> In this case, the government, as creditor of the vendee, found itself in a most unfavorable position because *the vendee had failed to build up any equity.*
>
> And so, although the government may be correct in saying that its liens attached to the land contract interest of the vendee, the vendee's equitable title was in effect worthless in dollar terms since there was nothing to which the liens attached, except perhaps the vendee's right to a deed upon full payment. The government has never asserted that it was willing to pay off the land contract in order to obtain the vendee's equity of redemption.

*Id.* at 594–95.

Plaintiffs construe the *Vereyken* decision to mean that since Mr. Spencer had failed to build up "sizeable" equity in the property, he had no equitable interest to which the federal lien could attach. The Court finds that

Plaintiffs' argument misconstrues the *Vereyken* decision. Nowhere in *Vereyken* did the court say that if a vendee fails to build up sizeable equity then the vendee's creditors have nothing to which to attach their liens. Instead, the court merely made an astute observation: If a vendee failed to build up a sizeable equity, a lien on the vendee's interest "holds little promise for the creditor ..." In other words, a creditor of the vendee can only attach a lien to the vendee's equity interest, and if that equity interest if very small, then the creditor can only attach a lien to this very small interest.

The *Vereyken* court clearly stated that the vendee becomes the owner in equity of property to the extent of the payments he makes, and a creditor of the vendee can assert a claim against this equity interest. The court stated, "... the vendee becoming in equity the owner of the real property to the extent of payments made. A creditor of the vendee can assert a claim against this 'equity.'" *Id.* The *Vereyken* court only refused to permit the federal lien to attach to the property, because the vendee had failed to build up *any* equity in the property.

In the instant action, the federal tax lien attached to whatever equity interest Mr. Spencer had built up in the property. Thus, the sole remaining issue is to determine Mr. Spencer's equity interest in the property.

### 2. Mr. Spencer's Equity Interest In The Property Is $2,315.46.

■ Plaintiffs argue that Mr. Spencer had no equity interest in the property, and Defendant argues that Mr. Spencer had a $2,580.26 equity interest.[4] However, both parties fail to follow the *Vereyken* court's guidance in determining a vendee's equity interest.

As explained above, the *Vereyken* court found that the federal lien failed to attach to the vendee's equity interest because the vendee had no equity interest. The court explained that a vendee's equity interest is measured by the amount that the vendee has paid on the contract:

The nature of the vendee's 'equitable title' is analogous to the vendor holding legal title in trust for the vendee pending full payment, and *the vendee becoming in equity the owner of the real property to the extent of payments made. A creditor of the vendee can assert a claim against this 'equity.'*

*Id.* at 594.

Although the Sixth Circuit stated that a vendee's equity interest equals the amount in payments that the vendee made on the contract, the *Vereyken* court never discussed the actual equity interest because it determined that the vendee had no equity interest. The Court finds that if the *Vereyken* court had the opportunity actually to determine the equity interest, it would have found that its statement that the equity interest equals the amount of payments unduly inflates the vendee's equity interest.

Although a vendee's purchase amount may be amortized over time, each payment does not reflect an equal equity stake in the property. If each payment were to be divided between interest and principal, the beginning payments would constitute mainly interest payments and would only reduce the principal slightly. Over time, as the payments begin to shrink the principal amount owed, each payment constitutes less of an interest payment and reflects more of a reduction in the principal amount owed. Therefore, in order to assess the equity interest, the Court will not look to the amount of payments made, but will look to the amount by which the vendee reduced the principal amount owed on the contract.

Thus, Mr. Spencer was the owner in equity of the property to the extent that he reduced the principal amount he owed on the contract. Mr. Spencer made a $2,000 down payment on the property, and according to Defendant's motion for summary judgment, Mr. Spencer had reduced the principal amount owed on the land contract by an additional $315.46. Thus, Mr. Spencer's equity interest in the property was $2,315.46,

---

**4.** As explained in Part IV, Section C of this Opinion and Order, Defendant arrives at this figure by subtracting the amount Mr. Spencer owed on the land contract from the value of the property at the time Mr. Spencer executed the quitclaim deed.

and the federal tax lien attaches to the property in this amount.

Defendant's argument that Mr. Spencer's equity interest in the property is $2,580.26 is mistaken. As detailed in Part IV, Section C of this Opinion and Order, Defendant argues that Mr. Spencer's equity interest is the value of the property at the time Mr. Spencer executed the quitclaim deed minus the amount Mr. Spencer still owed on the land contract. As explained above, the value of the property is irrelevant to determining a vendee's equity interest.

The Court refuses to adopt Defendant's argument that the Court should examine the value of the property to determine the vendee's equity interest for two main reasons.

First, nowhere in the *Vereyken* decision did the Sixth Circuit intimate that it would consider the market value of the property in determining the vendee's equity interest. Instead, the court looked only to the amount of the payments that the vendee had made.

Second, the *Vereyken* court implied that in addition to the amount of payments, a vendee's creditor may also have the right to attach a lien to the vendee's right to a deed upon full payment. *See Vereyken*, 964 F.2d at 595. However, the creditor must offer to pay the balance owed on the land contract if it desires to exercise the vendee's right to redeem the legal title in the entire property. The court explained,

> And so, although the government may be correct in saying that its liens attached to the land contract interest of the vendee, *the vendee's equitable title was in effect worthless in dollar terms since there was nothing to which the liens attached, except perhaps the vendee's right to a deed upon full payment. The government has never asserted that it was willing to pay off the land contract in order to obtain the vendee's equity of redemption.*

*Id.* at 594–95 (emphasis added).

Thus, in the instant action, if Defendant had offered to pay the balance of the land contract in order to obtain Mr. Spencer's equity of redemption, it might be entitled to the appreciation in the property. However, Defendant has made no such offer and,

therefore, Defendant is only entitled to the amount Mr. Spencer paid to reduce the principal amount he owed under the contract.

## V. *CONCLUSION*

For the foregoing reasons, the Court finds that the federal tax lien attached to Mr. Spencer's equity interest in the property— $2,315.46.

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that Plaintiff's Motion for Summary Judgment be, and hereby is, DENIED.

IT IS FURTHER ORDERED that Defendant's Motion for Summary Judgment be, and hereby is, GRANTED. However, the federal tax lien only attaches to the property in the amount of $2,315.46 plus statutory interest, not $2,515.26.