**WHAYNE SUPPLY COMPANY, INC., Appellant,**

v.

**COMMONWEALTH OF KENTUCKY REVENUE CABINET, Appellee.**

No. 95–SC–490–DG.

Supreme Court of Kentucky.

June 20, 1996.

Bruce F. Clark, Timothy C. Kimmel, T. Kennedy Helm III, Stites & Harbison, Frankfort, for Appellant.

Barbara Curtin Kenney, Donald S. Guier, Revenue Cabinet, Frankfort, for Appellee.

John T. McGarvey, Hal D. Friedman, M. Thurman Senn, Morgan & Pottinger, P.S.C., Louisville, Ronald C. Smith, Stephen J. Peters, William N. Ivers, Stewart & Irwin, Indianapolis, IN, Katherine Gail Russell, Rubin, Hays & Foley, Louisville, Stuart A. Handmaker, Michael C. Bratcher, Seiller & Handmaker, Louisville, William R. Mapother, Thomas L. Canary, Jr., Mapother & Mapother, Louisville, Thomas A. Klausing, Louisville, for Amicus.

GRAVES, Justice.

Whayne Supply Company, Inc. (hereinafter "Whayne") appeals from a decision entered by the Court of Appeals declaring that a prior filed state tax lien under KRS 134.420(2) has priority in proceeds of collateral over a purchase money security interest in the same collateral (hereinafter "PMSI") filed under KRS 355.9–101.

The facts of the case are not in dispute. On June 11, 1990, Panbowl Energy, Inc. (hereinafter "Panbowl") exercised an option and purchased a Gardner Denver GD4SC Drill from Whayne. The purchase price of the equipment was $232,372.64; Panbowl paid $11,500.00 as a down payment, leaving $220,872.64 as the unpaid balance. The unpaid balance was completely financed by Whayne, which retained a security interest in the equipment. On June 12, 1990, Whayne filed a financing statement with the Breathitt County Clerk. The result of the security agreement and filed financing statement was a perfected Purchase Money Security Interest in the equipment under KRS 355.9–107 [1] for Whayne.

Six months earlier, on December 8, 1989, the Revenue Cabinet had filed a Notice of State Tax Lien against Panbowl in the office of the Breathitt County Clerk pursuant to KRS 134.420(2).[2] The lien was for unpaid

---

1. KRS 355.9–107 provides in pertinent part as follows: "A security interest is a 'purchase money security interest' to the extent that it is (1) taken or retained by the seller of the collateral to secure all or part of its price...."

2. KRS 134.420(2) read as follows at the time the Cabinet filed its lien:
   The state shall have a lien of equal rank with the lien provided in subsection (1) of this section on all property of a taxpayer who owes any

taxes of Panbowl and was on "all interest in property, either real or personal, tangible or intangible, in this state then owned or subsequently acquired" by Panbowl.

Panbowl subsequently defaulted on the promissory note and surrendered the equipment to Whayne pursuant to the security agreement. By letter dated March 11, 1992, Whayne notified Panbowl and Panbowl's lienholders, including the Cabinet, of Whayne's intent to sell the equipment at public auction. On April 17, 1992, the equipment was sold for $58,500.00 leaving a deficiency balance on Panbowl's promissory note of $100,488.83. Whayne notified Panbowl and its lienholders of the results of the public auction by letter dated May 12, 1992, and on October 8, 1992, the Cabinet filed suit in Franklin Circuit Court seeking the proceeds from the sale of the equipment, namely the $58,500.00 credited by Whayne to Panbowl's account.

On January 22, 1993, Whayne moved for summary judgment arguing that its PMSI was superior to all other security interests and liens including the state's tax lien. The Cabinet responded on February 3, 1993, and also moved for summary judgment. The Franklin Circuit Court granted summary judgment in favor of the Cabinet on April 19, 1993, holding as a matter of law that a prior

filed state tax lien has priority against subsequent security interests including PMSIs. The Franklin Circuit Court judgment was affirmed by a decision of the Court of Appeals on February 10, 1995.

■ Whayne argues that the courts below erred in concluding that the prior filed state tax lien has priority over the purchase money security interest. We reverse because the end result is a windfall for the Commonwealth in that money is taken from the taxpayer's creditor Whayne and not from the taxpayer Panbowl.

Whayne has a perfected PMSI in the equipment. KRS 355.9–312(4) provides:

A purchase money security interest in collateral other than inventory has priority over a conflicting security interest in the same collateral or its proceeds if the purchase money security interest is perfected at the time the debtor receives possession of the collateral or within twenty (20) days thereafter.

This provision gives Whayne superiority over all other security interests in the equipment, including prior filed security interests. KRS 355.9–312(4) is an exception to the general priority rule of KRS 355.9–312(5)[3] which

property tax, license tax, inheritance or estate tax, excise tax, income tax, or other tax, when such taxes are not included in or covered by the lien provided in subsection (1) of this section. This lien shall arise at the time any assessment becomes delinquent, and it shall continue until the amount of the original assessment and any subsequent assessments of liability for taxes, fees, penalties, interest or costs are fully paid. The lien shall attach to all interest in property, either real or personal, tangible or intangible, in this state then owned or subsequently acquired by the person against whom the assessment is made. The department of revenue may file notice of the lien and every city of the third, fourth, fifth and sixth class shall file notice of the delinquent tax liens with the county clerk of any county or counties in which the taxpayer's business or residence is located, or in any county in which the taxpayer has an interest in property and such notice shall be recorded in the same manner as notices of lis pendens are filed, and the file shall be designated miscellaneous state and city delinquent and unpaid tax liens. Such recordation shall constitute notice of both the original assessment and all subsequent assessments of liability against the same taxpayer. Upon request, the department of revenue shall disclose the specific

amount of liability at a given date to any interested party legally entitled to such information. The lien of the Commonwealth of Kentucky for taxes shall be superior to all liens and security interests created under Kentucky law except that nothing in this subsection shall be construed to alter or change in any way the law relative to the rights and duties of a holder in due course as provided in KRS Chapter 355, Art. 3, or affect the rights of any person taking the property or a lien thereon for value without actual or constructive notice....

3. KRS 355.9–312(5) provides in pertinent part: In all cases not governed by other rules stated in this section ... priority between conflicting security interests in the same collateral shall be determined according to the following rules:

(a) Conflicting security interests rank according to priority in time of filing or perfection. Priority dates from the time a filing is first made covering the collateral or the time the security interest is first perfected, whichever is earlier, provided that there is no period thereafter when there is neither filing nor perfection;
(b) So long as conflicting security interests are unperfected, the first to attach has priority.

provides priority to the first security interest to file or perfect.

At the time the Cabinet filed its lien KRS 134.420(2) provided in pertinent part:

The lien of the Commonwealth of Kentucky for taxes shall be superior to all liens and security interests created under Kentucky law.

The debt owed by Panbowl to Whayne was created by property conveyed by Whayne in which Whayne retained a security interest. *When Panbowl took title, the property was already encumbered with a lien. Consequently, there was never an instant when Panbowl had an unencumbered title.* Panbowl never acquired a sufficient equitable interest to which the tax lien could attach. This distinction is necessary to protect persons who extend credit by retaining an interest in assets. KRS 355.9–107 is designed to protect one who furnishes property by providing a security interest in the property until the purchase price has been paid. This is consistent with the common law rule enabling a purchase money mortgagee, even one with notice, to prevail over the holder of a prior security interest claiming under an after-acquired property clause.

Under the Cabinet's theory, its statutory lien created pursuant to KRS 134.420(2) is prior and superior to a subsequently recorded PMSI. However, the Cabinet concedes that a properly perfected PMSI is prior and superior to a previously filed non-purchase money security interest. Cabinet's Court of Appeal's Brief at pp. 1, 10. Neither does the Cabinet dispute that its tax lien under KRS 134.420(2) would be inferior to a prior recorded non-purchase money security interest in a taxpayer's property. This case does not involve a "security interest" but involves a "purchase money security interest." The difference is critical. The PMSI is recognized as superior to any other UCC security interest, including those security interests which themselves are superior to the general tax lien of KRS 134.420(2).

Without the credit extended by Whayne or some lender, there would have been no transfer of property and thus no property upon which the Cabinet could assert a lien. Said differently, Whayne provided the equipment in exchange for a promissory note and a PMSI from Panbowl. Since Whayne furnished the asset upon credit, its lien is superior to all others. It would be absurd to believe that without a superior status, Whayne would furnish the equipment on credit. Surely no rational vendor would sell goods on credit and immediately be relegated to an inferior lien status. Unless priority is granted to a PMSI, whether it be a vendor or lender, credit based on sales transactions will virtually cease.

■ Although the tax lien attaches to all property owned or subsequently acquired by the taxpayer, it is subordinate to all security interests recorded prior to the tax lien. KRS 134.420(2) does not explicitly abrogate the right of priority given to the holder of a PMSI. Under KRS 355.9–312(4), the PMSI is superior to all security interests in the same property. Thus, a perfected PMSI in the collateral is superior to those prior recorded security interests which are in turn superior to the 134.420(2) tax lien. The PMSI is a property interest to which the general tax lien does not attach. The rights of the state to collateral are derivative from the taxpayer, and the state cannot create a right which the taxpayer does not have.

In *Vereyken v. Annie's Place, Inc.,* 964 F.2d 593 (6th Cir.1992), the Sixth Circuit explained the reason that a federal tax lien cannot attach to property which was subject to a vendor's lien, i.e. purchase money security interest. The court opined as follows:

The nature of the vendee's "equitable title" is analogous to the vendor holding the legal title in trust for the vendee pending full payment, and the vendee becoming in equity the owner of the real property to the extent of payments made. A creditor of the vendee can assert a claim against this "equity," But in the absence of the vendee having built up a sizeable equity as the result of substantial payments on the contract, that remedy holds little promise for the creditor, since his claim would be subject to the vendor's legal title. In this case, the government, as creditor of the vendee, found itself in a most unfavorable

position because the vendee had failed to build up any equity.

And so, although the government may be correct in saying that its liens attached to the land contract interest of·the vendee, the vendee's equitable title was in effect worthless in dollar terms since there was nothing to which the liens attached, except perhaps the vendee's right to a deed upon full payment. The government has never asserted that it was willing to pay off the land contract in order to obtain the vendee's equity of redemption.

*Id.*, 964 F.2d at 594–95. Since the taxpayer had no equity in the property, the government's tax lien could not attach to anything of value. Therefore, the court upheld the priority of the vendor's lien/purchase money security interest and the tax lien was declared inferior. Likewise, in their treatise, *The Uniform Commercial Code of Kentucky,* Leibson and Nowka have noted the relative priority of tax liens and purchase money security interests.

> One basic exception important to secured parties is the purchase money exception. Since the lien is understood to reach only the debtor's equity in property, a tax lien is valid against the purchase money security interest only to the extent of the debtor/taxpayer's equity in the property.[4]

Whayne has enriched the taxpayer's estate by the assets provided to the taxpayer. For this reason, it is reasonable to allow a corresponding security interest in the fruits of the assets, with the government relegated to the borrowing taxpayer's net after the lender is reimbursed. The government has suffered no diminution of the assets which were available to satisfy its tax claim before the transfer. The term "security interest" is defined in KRS 355.1–201(37). Purchase money security interests are not specifically referenced in KRS 355.1–201(37). That is in the general definitional section of the Uniform Commercial Code. The term "purchase money security interest" is separately defined in KRS 355.9–107. This is the article of the Uniform Commercial Code that deals specifically with secured transactions. The purchase money security interest enables the debtor to acquire rights in or the use of collateral while the vendor still retains an enforceable possessory interest in accordance with the security agreement. KRS 355.9–102 excludes "statutory liens" from the scope of Article 9, but this does not mean that the priority rules of Article 9, Part 3 should not be applied by the courts to resolve priority disputes. KRS 134.420(2) specifically recognizes the priority of security interests; it does not exclude Article 9 from lien priority disputes. Kentucky's tax lien statute neither adopts a separate priority resolution system nor rejects the system set out in Article 9. There is no clear expression of legislative intent in KRS 134.420(2) to disregard the long standing "superior-priority" of PMSI's—the question of PMSI's is simply not addressed. We recognize the validity of the system of lien priority rules created by Article 9 and hold that a purchase money security interest has priority over a tax lien in the same property.

The judgment and order of the Franklin Circuit Court and the decision of the Court of Appeals are reversed. This matter is remanded to the Franklin Circuit Court for entry of orders consistent with this opinion.

BAKER, GRAVES, KING, LAMBERT and WINTERSHEIMER JJ., affirm.

STUMBO, J., concurs in part and dissents in part by separate opinion, in which STEPHENS, C.J., joins.

STUMBO, Justice, concurring in part and dissenting in part.

I agree with the majority's analysis except that I believe that the Revenue Cabinet's lien has superior status as to the interest that Panbowl held in the drill as a result of its down payment of $11,500.00. The Revenue Cabinet's lien attached to that equitable interest that existed as a result of the down payment at the time the purchase money security interest was created. I would not hold that because the equitable interest was

---

**4.** Leibson, David J. and Nowka, Richard H. *The Uniform Commercial Code of Kentucky,* 904 (2d ed. 1992).

subsequently consumed by accrued interest, the tax lien loses its priority upon the sale of the property. Thus, I would hold that the first $11,500.00 realized by the sale of Panbowl's drill was payable to the Revenue Cabinet.

STEPHENS, C.J., joins this opinion.