Jay R. ORME; Julie Ann Orme, Plaintiffs–Appellees,

v.

UNITED STATES of America, Defendant–Appellant.

and

Balyeat Law, P.C., as Trustee, Defendant.

No. 00–35122.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 9, 2001

Filed Oct. 18, 2001

David F. Stufft, Kalispell, Montana, for the plaintiffs-appellees.

John A. Nolet, Department of Justice, Tax Division, Washington, D.C., for the defendant-appellant.

Before: BOOCHEVER, TASHIMA, and TALLMAN, Circuit Judges.

TASHIMA, Circuit Judge:

The United States appeals the district court's grant of summary judgment in favor of Jay R. Orme and Julie Ann Orme. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we reverse.

The Ormes had transferred real property to Clyde M. Burgess and Janice K. Burgess pursuant to a land sales contract.

During the term of the contract, the United States filed a federal tax lien on the property against the Burgesses. Thereafter, the Burgesses forfeited the land sales contract and title was returned to the Ormes. The Ormes sought to quiet title to the property. The district court concluded that the forfeiture of a land sales contract was not a sale of property subject to the notice requirements of 26 U.S.C. § 7425(b); therefore, that the federal tax lien was eliminated upon forfeiture of the land sales contract. The United States argues that, under 26 U.S.C. §§ 7425(b) and (c)(4), the forfeiture of the land sales contract was a sale of property subject to the notice requirement and, because no notice was given, the forfeiture was subject to the federal tax lien. We agree.

## BACKGROUND

The relevant facts are not in dispute. The Ormes owned a parcel of real property located in Flathead County, Montana. On November 27, 1989, the Ormes entered into a "Contract for Deed" under which they agreed to sell the property to the Burgesses for $25,000. Under the contract, the Burgesses agreed to make a down payment of $2,500 and monthly payments thereafter until the sale price was paid in full in April 1997. Under the default provision of the contract, the Ormes had the option of terminating the contract if the Burgesses failed to comply with any of the covenants set forth in the contract. To that end, a quitclaim deed transferring the Burgesses' interest in the property back to the Ormes was held in

escrow, to be given to the Ormes in the event of a termination.

On May 3, 1994, pursuant to 26 U.S.C. § 6321,[1] the Internal Revenue Service ("IRS") filed a Notice of Federal Tax Lien against the Burgesses with the Clerk and Recorder of Flathead County, Montana. The lien was in the amount of $5,312.22, representing the amount of the Burgesses' unpaid 1989 federal income tax liabilities.

On June 23, 1997, the Ormes exercised their option to terminate the contract and recorded the previously executed quitclaim deed, on July 11, 1997.[2] The Ormes, however, did not give notice of the Burgesses' forfeiture of the land sales contract to the IRS. Upon attempting to convey the property to another buyer, the Ormes discovered that the federal tax lien representing the Burgesses' unpaid income tax liabilities was recorded against the property.

The Ormes then filed an action to quiet title in state court, seeking a decree that they owned the property free and clear of the federal tax lien. The United States removed the case to federal court, where the parties filed cross-motions for summary judgment. The district court granted the Ormes' motion and denied the Government's motion.

The district court rejected the Government's argument that 26 U.S.C. § 7425(b) applied to the case, reasoning that, under *Runkel v. United States*, 527 F.2d 914 (9th Cir.1975), forfeiture of a land sales contract was not a "nonjudicial sale of property" within the meaning of § 7425(b).[3] It

---

**1.** Section 6321 provides, in part, that "[i]f any person liable to pay any tax neglects or refuses to pay the same after demand, the amount ... shall be a lien in favor of the United States upon all property ... belonging to such person."

**2.** The propriety of the contract termination is not in issue.

**3.** Under 26 U.S.C. § 7425(b), a nonjudicial sale of property on which the United States has a lien is made "subject to and without disturbing the lien" if (1) notice of the lien is filed in the place provided by law for such filing more than 30 days before the sale, and (2) the United States is not given notice of

concluded, therefore, that the notice requirements of § 7425(b) did not apply. The district court then reasoned that state law, not federal law, determined whether the federal tax lien survived the forfeiture of the land sales contract. Applying *Greenup v. United States*, 239 F.Supp. 330 (D.Mont.1965), the district court further concluded that, because the Government made no showing of unjust enrichment by the Ormes, there was no property interest to which the federal tax lien remained attached after the forfeiture. The United States filed a timely appeal.

## STANDARD OF REVIEW

■ A grant of summary judgment is reviewed de novo. *Margolis v. Ryan*, 140 F.3d 850, 852 (9th Cir.1998). Summary judgment is appropriate if, viewing the evidence in the light most favorable to the nonmoving party, there are no genuine issues of material fact, and the district court correctly applied the relevant substantive law. *Id.*

## ANALYSIS

■ The district court recognized, and the parties do not dispute, that the federal tax lien properly attached to the Burgesses' state-law created equitable interest in the property.[4] State law governs the divestiture of such federal tax liens "except to the extent that Congress may have entered the field." *United States v. Brosnan*, 363 U.S. 237, 241, 80 S.Ct. 1108, 4 L.Ed.2d 1192 (1960). The district court reasoned that § 7425(b) did not apply to forfeitures of land sales contracts and instead based its holding on Montana law. The Government argues that Congress has entered the field by providing, in § 7425(c)(4), that the forfeiture of a land sales contract is subject to the notice requirements of § 7425(b).

■ We agree that Congress has spoken clearly on the divestiture of federal tax liens in sales of property. Section 7425(b) governs nonjudicial "sale[s] of property"[5] on which the Government claims a federal tax lien. A nonjudicial sale of property is made "subject to and without disturbing" federal tax liens if (1) the federal tax liens were filed more than 30 days before the sale, and (2) notice of the sale is not given to the IRS in accordance with § 7425(c)(1).[6] 26 U.S.C. § 7425(b)(1).

---

such sale in the manner prescribed in § 7425(c)(1). 26 U.S.C. § 7425(b).

4. "We look initially to state law to determine what rights the taxpayer has in the property the Government seeks to reach, then to federal law to determine whether the taxpayer's state-delineated rights qualify as 'property' or 'rights to property' within the compass of the federal tax lien legislation." *Drye v. United States*, 528 U.S. 49, 58, 120 S.Ct. 474, 145 L.Ed.2d 466 (1999). Montana law makes clear that the purchaser under a land sales contract holds an equitable interest in real property, although legal title remains in the seller. *Kern v. Robertson*, 92 Mont. 283, 12 P.2d 565, 567 (1932). Under 26 U.S.C. § 6321, a federal tax lien may attach to "all property and rights to property" belonging to a taxpayer in default. *See Drye*, 528 U.S. at

58–60, 120 S.Ct. 474 (holding that a federal tax lien properly attached to a state-law-created right to property that had pecuniary value).

5. Under 26 U.S.C. § 7425(c)(4), the forfeiture of a land sales contract is a "sale of property," as discussed below. 26 U.S.C. § 7425(c)(4).

6. If proper notice of the sale is given to the United States, or if notice of the federal tax lien was not filed more than 30 days before the sale, then the sale "shall have the same effect with respect to the discharge or divestment of such lien or such title of the United States, as may be provided with respect to such matters by local law of the place where such property is situated." 26 U.S.C. § 7425(b)(2).

Congress has also spoken directly on the effect of forfeitures of land sales contracts on federal tax liens. The plain language of § 7425(c)(4) includes the forfeiture of a land sales contract in the definition of a "sale of property." It provides expressly: "For purposes of subsection (b), a sale of property includes any forfeiture of a land sales contract." 26 U.S.C. § 7425(c)(4).

Furthermore, the history of § 7425(c)(4) shows that Congress added the provision for the purpose of overturning decisions holding that forfeitures of land sales contracts were not "sales of property" governed by § 7425(b). In 1986, Congress amended the Internal Revenue Code specifically to provide that forfeitures of land sales contracts are "sales" for purposes of § 7425(b). *See* Tax Reform Act of 1986, Pub.L. No. 99–514, 100 Stat. 2085, 2765. The House Conference Report on the amendment states that this change was made to overturn decisions including *Runkel,* the case on which the district court in the instant case relied.[7] *See* H.R. Conf. Rep. No. 99–841, at II–818 (1986), *reprinted in* 1986 U.S.C.C.A.N. 4075, 4906 (stating that forfeitures of land sales contracts are subject to the notice requirements of § 7425 and overturning *Runkel* on that issue). Thus, both the plain lan-

guage of § 7425(c)(4) and its history make clear that forfeitures of land sales contracts are "sales of property" for purposes of § 7425(b).

The Sixth Circuit has agreed that § 7425(c)(4) makes forfeitures of land sales contracts subject to the requirements of § 7425(b). In *Vereyken v. Annie's Place, Inc.,* 964 F.2d 593 (6th Cir.1992), the Government filed federal tax liens against a land sales contract vendee's equitable property interest. During the term of the contract, however, the vendee had failed to "buil[d] up a sizeable equity as the result of substantial payments on the contract" *Id.* at 594. Thus, "the vendee's equitable title was in effect worthless in dollar terms," and so there was "nothing to which the liens attached, except perhaps the vendee's right to a deed upon full payment." *Id.* at 594–95. Nevertheless, the court recognized that, upon forfeiture, the contract vendor took back the equitable title subject to the federal tax lien. *Id.* at 595 (citing 26 U.S.C. §§ 7425(b), (c)(4)).[8]

Because Congress has clearly entered the field of divestiture of federal tax liens upon forfeiture of land sales contracts, federal law, not state law, controls. *See Bros-*

---

**7.** In *Runkel,* we held that the declaration of a forfeiture under a land sales contract was not a sale within the meaning of § 7425(b). *Runkel,* 527 F.2d at 917.

**8.** In *Vereyken,* because there was no equity from which the Government could satisfy its lien, the Government tried to argue that the federal tax lien, which initially attached only to the contract vendee's equitable title, attached to the contract vendor's legal title upon forfeiture. *Vereyken,* 964 F.2d at 595. The Government tried to characterize the contract vendor's interest as a "vendor's lien" over which the federal tax lien gained priority under either the doctrine of merger or the operation of 26 U.S.C. § 7425. *Id.* at 594–96. The court, apparently proceeding on the assumption that the vendor's legal title

constituted a vendor's lien prior and senior to the federal tax lien, held that § 7425 does not elevate junior federal tax liens to priority status. *Id.* at 596. Rather, "section 7425 merely preserves federal tax liens from being extinguished through sale of the underlying collateral; it does not otherwise alter ... federal priority rules." *Id.* (internal quotations omitted).

The Ormes argue that, as in *Vereyken,* their legal title constituted a lien prior and senior to the federal tax lien. The Government, however, claims a lien against only the equitable interest held by the Burgesses before forfeiture—not against the legal title retained by the Ormes. Therefore, unlike the facts in *Vereyken,* there is only one lien at issue here, and thus no issue of priorities.

*nan*, 363 U.S. at 241, 80 S.Ct. 1108. Therefore, the district court erred in concluding that the forfeiture of the land sales contract was not governed by the requirements of § 7425(b). Under § 7425(c)(4), the Burgesses' forfeiture of the land sales contract was a sale of property that was subject to the requirements of 26 U.S.C. § 7425(b).

■ The record shows that the § 7425(b) requirements for discharging a federal tax lien were not met. The parties agree that the Ormes terminated the land sales contract upon the Burgesses' default without giving notice to the IRS. They also agree that the Government filed a Notice of Federal Tax Lien against the Burgesses in the amount of $5,312.22 on May 3, 1994, more than 30 days before the termination of the contract, which was on June 23, 1997. Because the Ormes terminated the contract without giving notice as required under § 7425(b) and because the federal tax lien was filed more than 30 days before the termination, the federal tax lien survived the Ormes' forfeiture of the land sales contract. *See* 26 U.S.C. §§ 7425(b)(1), (c)(4).

Furthermore, when the Ormes recorded the quitclaim deed to the property on July 11, 1997, the Burgesses had built up $13,457.44 of equity, leaving a balance of $11,542.56 in principal on the $25,000 purchase price. Indeed, when the Government filed its lien, the Burgesses had already established approximately $10,000 in equity. Thus, unlike in *Vereyken,* where the vendee had built up no equity, the Government's lien in the amount of $5,312.22 could be fully satisfied by the Burgesses' equitable interest in the property. *See Vereyken,* 964 F.2d at 594–95.

## CONCLUSION

Federal statute explicitly governs the divestiture of federal tax liens upon forfeiture of a land sales contract. Because the Ormes failed to meet the requirements set forth in § 7425(b), the Ormes took back the Burgesses' equitable interest subject to the federal tax lien. We therefore reverse the district court's grant of summary judgment in favor of the Ormes and remand for entry of judgment consistent with this opinion.

**REVERSED AND REMANDED.**